UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EDWARD ROOT | : | No. 3:03CV00949(JCH) |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| TIMOTHY LISTON | : | |
| *Defendant* | : | JUNE 11, 2004 |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT LISTON'S MOTION FOR SUMMARY JUDGMENT

This is a civil rights action filed by the plaintiff against the defendant, Connecticut State's

Attorney Timothy Liston (hereinafter "Mr. Liston").   The plaintiff's action alleges state law

claims of fraud and severe emotional distress and federal claims, pursuant to 42 U.S.C. § 1983,

of unreasonable seizure and the setting of an unreasonable bond in violation of his constitutional

rights under the Fourth, Eighth and Fourteenth Amendments.  Specifically, the plaintiff alleges

that Mr. Liston materially misrepresented the amount of bond set by a Superior Court Judge on a

Failure to Appear charge when he told a trooper that the bond was $250,000 when in fact it was

$1,000, which resulted in his unlawful incarceration for three days.  The plaintiff seeks

unspecified compensatory and punitive damages, as well as attorney fees.

This motion seeks summary judgment in favor of Mr. Liston.  As the attached Statement

of Undisputed Facts, supporting affidavit, deposition testimony, court records and court

transcript demonstrate, Mr. Liston did not violate the plaintiff's state or federal rights and there

are no genuine issues of material fact in dispute.  However, even if Mr. Liston did violate one or

more of the plaintiff's rights, which he did not, he is nevertheless entitled to absolute

prosecutorial immunity, because his action of raising the plaintiff's bond occurred during the

judicial phase of the criminal process in his role as an advocate for the State of Connecticut.  In

addition, in the event he is not entitled to prosecutorial immunity, Mr. Liston is nevertheless

entitled to qualified immunity because his actions under the circumstances were reasonable, and the law was not clearly established that he lacked the authority to act as he did.

WHEREFORE,  the defendant, State's Attorney Timothy Liston, respectfully requests that summary judgment be entered in his favor on each of the plaintiff's federal claims.  As there will be no federal court jurisdiction, Mr. Liston further requests that the Court decline to exercise pendant jurisdiction over the plaintiff's remaining state law claims.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) requires the entry of Summary Judgment " if the pleadings, depositions, answers to interrogatories, and admissions on file together with any affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  "[T]he mere existence of a factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  A factual dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*  A "material fact" is one whose resolution will affect the ultimate determination of the case. *Id.*  In determining whether a material fact exists, the court must resolve all ambiguities in favor of the non-moving party. *Id.*, at 255;  see also *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir. 1990), *cert. denied*, 499 U.S. 921, 11 S.Ct. 1313, 113 L.Ed.2d 246 (1991).  The Supreme Court has stated:

> summary judgment procedure is properly regarded not as a
> disfavored procedural shortcut, but rather as an integral part of the
> federal rules, as a whole, which is designed to secure the just,
> speedy and inexpensive determination of every action.

*Celotex, Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  Used properly, Rule 56 is a "vital procedural tool to avoid wasteful trials," *Capitol Imaging Assocs. v. Mohawk Valley Medical Assocs*., 996 F.2d 537, 541 (2d Cir.), *cert. denied*, 510 U.S. 497 (1993), and to "isolate and dispose of factually unsupported claims."  *Celotex Corp*., at 323-324.

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the portions of the pleadings, affidavits or other documentary evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  Those facts that are material will be identified by the substantive law governing the case.  *Anderson*, 477 U.S. at 248.  Once the moving party meets its burden, the burden shifts to the non-moving party.

To defeat a motion for summary judgment, the non-moving party may not merely rely upon unsupported allegations made in their complaint, nor rely on "mere speculation or conjecture" to overcome a motion for summary judgment.  *Knight v. Fire Insurance Company*, 804 F.2d 9, 12 (2nd Cir. 1986), *cert. denied*, 480 U.S. 932 (1987).  The evidence must be presented in a manner consistent with its admissibility at trial.  *See First National Bank Co. of Clinton, Ill. v. Insurance Co. of North America*, 606 F.2d 760 (7th Cir. 1979)(in ruling on summary judgment motion, the court properly relied upon documents and exhibits identified by affidavit).  Unsworn statements of the parties, letters addressed to the litigants from third persons, and hearsay which does not fall under one or more exceptions listed in rules 803-805 of the Federal Rules of Evidence, may not be properly considered.  *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Beyene v. Coleman Security Service, Inc.,* 854 F.2d 1179 (9th Cir. 1988); *Edward B. Marks Music Corp. v. Stansy Music Corp.,* 1 F.R.D. 720 (S.D.N.Y. 1941).  Moreover, the plaintiff must point to "specific facts showing that there is a genuine issue for trial."  Rule 56(e); *Anderson*, 477 U.S. at 248.  The plaintiff must also produce evidence to show the existence of every element essential to the case which it bears the burden of

proving at trial.  *Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.*, 812 F.2d 141, 144 (3d Cir. 1987).

## ARGUMENT

## I.     STATE'S ATTORNEY LISTON IS ENTITLED TO ABSOLUTE IMMUNITY FOR HIS ACT OF RAISING THE COURT'S BOND BECAUSE HE DID SO DURING THE JUDICIAL PHASE OF THE CRIMINAL PROCESS IN HIS ROLE AS AN ADVOCATE FOR THE STATE OF CONNECTICUT

In any action against a state prosecutor, it is "proper to first address the applicability of absolute immunity before assessing whether a plaintiff's allegations sufficiently allege a constitutional violation."  *Sanchez v. Doyle*, 254 F. Supp. 2d 266, 267 (D. Conn. 2003).  The doctrine of absolute immunity bars the plaintiff's §1983 suit against Mr. Liston because he was acting in his official capacity[1] in furtherance of his duties and responsibilities as an advocate for the State of Connecticut at all times alleged in the plaintiff's Complaint, Exhibit M,[2] and thus is immune from suit under §1983.  *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999).  This immunity attaches to "virtually all acts, regardless of motivation, associated with the prosecutor's function as an advocate[,]" including the pre-trial phase of a case.  *Barrett v. United States*, 798 F.2d 565, 573, (2d Cir. 1986); *Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir. 1981).

In order to determine if absolute immunity is applicable to a particular action, a court must focus upon the nature of the act being performed and not the status of the individual performing it.  *Barrett v. United States*, at 573;  *Pinaud v. County of Suffolk*, 52 F.3d 1139 (2d Cir. 1995); *Sanchez*, at 271.  The court must also determine from the facts as to whether or not the disputed conduct was "intimately associated with the judicial phase of the criminal process."  *Imbler v.*

---

[1]  Though he is sued only in his individual capacity.
[2]  Exhibit M: Plaintiff's Complaint, dated May 27, 2003.

4

*Pachtman*, 424 U.S. 409, 430, 47 L.Ed. 2d 128, 96 S.Ct. 984 (1976).  If so, the official is entitled to immunity.

Connecticut's Supreme Court has explained that the absolute immunity granted to prosecutors is derived from the general doctrine of judicial immunity.  *Massameno v. Statewide Grievance Committee,* 234 Conn. 539, 567, 663 A.2d 317 (1995); *DeLaurentis v. New Haven*, 220 Conn. 225, 241, 597 A.2d 807 (1991).  Judicial immunity covers "all adjuncts to the judicial process.  In particular, prosecutors are immune from tort liability for their conduct as participants in the judicial proceedings."  *Id*., at 242.  The immunity afforded to prosecutors is premised upon "a vast quantum of discretion which is necessary for the vindication of the public interest." *Spring v. Constantino*, 168 Conn. 563, 565, 362 A.2d 871 (1975).  Prosecutors must be able to administer the law without fear of incurring liability in civil actions.  *DeLaurentis*, 220 Conn. at 241.  This requires absolute immunity.

Absolute immunity attaches to the duties of a prosecutor as a court official.  "The key to the immunity. . . held to be protective to the prosecuting attorney is that the acts, alleged to have been wrongful, were committed by the officer in the performance of an integral part of the judicial process."  *Spring*, 168 Conn. at 565 (citations omitted); see also *Day v. Morgenthau*, 909 F.2d 75, 77 (2d. Cir. 1990) ("Although section 1983 imposes liability on 'every person' who deprives another of a constitutional right under color of state law, the doctrines of absolute and qualified immunity shield prosecutors … from liability related to their official acts.").  The United States Supreme Court also recognizes that even duties of a prosecutor which involve actions taking place "apart from the courtroom", such as important decision-making in the criminal procedure process and preparation for his judicial duties, are included in his role as an advocate for the State, and fall within the ambit of prosecutorial immunity.  *Imbler v. Pachtman*, 424 U.S.

5

409, 431, n. 33, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

The United States Supreme Court, through its holdings in *Burns, Tucker v. Outwater*, 118 F.3d 930 (2d cir. 1997)*, and *Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988), has effectively delineated the scope of prosecutorial duties which are to be granted absolute immunity.  In *Burns*, the participation of a prosecutor in a probable cause hearing prior to the issuance of a search warrant entitled the prosecutor to absolute immunity from suit.  In *Tucker*, the setting of bail was deemed a judicial act and entitled the prosecutuor to immunity. *Id. at* 933.  But in *Forrester*, the managerial decision of terminating an employee did not entitle a judge to absolute immunity.  Collectively, these examples support the conclusion that "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity."  *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 113 S.Ct. 2602 (1993).

The Second Circuit Court of Appeals has recently adopted a two part test from the Supreme Court's decision in *Stump v. Sparkman*, 435 U.S. 349, 55 L.Ed 2d 331, 98 S.Ct.1099 (1978), "to determine whether a judge, (or other official performing a judicial function), is entitled to absolute immunity: 'First, a judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction….[;] second, a judge is immune only for actions performed in his judicial capacity."  *Sanchez v. Doyle*, 254 F. Supp. 2d 266, 267 (D. Conn. 2003), *quoting Tucker v. Outwater*, 118 F.3d 930, 933 (2d Cir. 1997).  This same rule applies to prosecutors.  *Barr v. Abrams*, 810 F.2d 358, 361; *Imbler*, supra, 424 U.S. at 422.

The plaintiff's four claims[3] arise from the alleged harm caused by State's Attorney Liston's action in raising the $1,000 bond set by the Connecticut Superior Court Judge Carol Wolven on

---

[3]  The plaintiff has alleged state law claims of fraud and severe emotional distress, and federal claims under the Fourth, Eighth and Fourteenth Amendments.

the Re-arrest Warrant for the plaintiff's Failure to Appear charge, to $250,000, without the approval of the court.  The plaintiff has alleged that the actions of the defendant were intentional, malicious, and fraudulent, but as the evidence set forth in the Statement of Facts attests, Mr. Liston had lawful authority to increase the plaintiff's bond.  And his motivation for doing so, though legitimate, is irrelevant when in the determination of whether immunity applies.  *Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir. 1981)(absolute immunity covers "virtually all acts, regardless of motivation, associated with the prosecutor's function as an advocate"); *see also Barrett v. United States*, 798 F.2d 573 (2d Cir. 1986).  In any event, even if Mr. Liston's action did violate the plaintiff's rights, which it did not, he is nevertheless entitled to absolute prosecutorial immunity, since his conduct occurred during the judicial phase of the proceedings in furtherance of his duties as an advocate for the State of Connecticut.  *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1149 (2d Cir. 1995) ("advocating a particular level of bail" is covered by absolute immunity), *quoting Myers v. Morris*, 810 F.2d 1437, 1446 (8th Cir.) *cert. denied*, 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987).

**A.      Mr. Liston Had A Colorable Claim Of Jurisdiction Given The Statutory Scheme For Setting Bail**

Mr. Liston had a grant of statutory authority to order a police department to set a bond, or hold an arrested person without bond in the event of a warrantless arrest, until a hearing could be held before the court then sitting for the geographical area, but if the court was not sitting, then until the next sitting of the court.  C.G.S. § 54-63d(d).[4]  By virtue of this statute, Mr. Liston had the jurisdictional authority to increase the plaintiff's bond under the circumstances present in this

---

[4] Conn. Gen. Stat. Sec. 54-63d.  Release by bail commissioner.  (d)  The police department shall promptly comply with the order of release of the bail commissioner, except that if the department objects to the order of any of its conditions, the department shall promptly so advise a state's attorney or assistant state's attorney, the bail commissioner and the arrested person.  The state's attorney or assistant state's attorney  may authorize the police department to delay release, until a hearing can be had before the court then sitting for the geographical area which includes the municipality  in which the arrested person is being detained or, if the court is not sitting, until the next sitting of said court.

case, even though the plaintiff was arrested pursuant to a warrant. Indeed, although § 54-63d(d) does not expressly permit a State's Attorney to modify a bond when it has been set by a court or judge, it equally does not prohibit such an action. In fact, the only statute which contains any prohibition against modifying a court set bond is found in C.G.S. § 54-63c, but that restriction only applies to police officers. See C.G.S. § 54-63c[5]. Therefore, in accordance with the test adopted by the Second Circuit Court of Appeals, Mr. Liston is entitled to absolute immunity since C.G.S. § 54-63d(d) clearly provides a State's Attorney with a jurisdictional basis to set bond in some circumstances and C.G.S. § 54-63c does not preclude a prosecutorial official from modifying a court or judge set bond. *Sanchez v. Doyle*, 254 F. Supp. 2d 266, 272 (D. Conn. 2003). And, even if Mr. Liston acted in excess of the authority granted to him in this particular case, it was at most a mistake. But because he did not act in the "clear absence of all jurisdiction", he is entitled to the cloak of immunity. *Tucker v. Outwater*, 118 F.3d 930, 933 (2d Cir. 1997).

Indeed, since prosecutors have authority to raise bond in some circumstances, Mr. Liston was clearly entitled to believe in good faith that he had authority to raise the bond in this case, especislly given the dramatic change in circumstances from the time Judge Wolven set the bond at $1,000 to the time Mr. Liston learned of the threat to Attorney Hoffman's life.

An examination of the record in the present matter clearly shows that Mr. Liston increased the plaintiff's bond to ensure the plaintiff's appearance in court the following Monday. Credible evidence existed that the plaintiff had threatened to kill Assistant State's Attorney Hoffman. This constituted a very serious change in circumstances from the date the bond had been set by

---

[5] Conn. Gen. Stat. Sec. 54-63c. Release by law enforcement officer. "(a) Except in cases of arrest pursuant to a bench warrant of arrest in which a court or judge thereof has indicated that bail should be denied or ordered that the officer or indifferent person making such arrest shall, without delay, bring such person before the clerk or assistant clerk of the superior court for the geographical area . . . . shall promptly advise such person of their right to be interviewed concerning the terms of release. . . . After such a waiver, refusal or interview, the police officer shall promptly order release of the person upon execution of a written promise to appear or the posting of such bond as may be set by the police officer, except that no condition of release set by the court or judge thereof may be modified by such officer . . . ".

the court.  By the time Mr. Liston learned of this threat, there was no way to present the matter to the court.  Mr. Liston believed that this threat warranted an increase in the plaintiff's bond on the Re-arrest Warrant from $1,000 to $250,000 to ensure that the plaintiff would be in court the following Monday to face the criminal charges which were pending against him.  The threat the plaintiff made against Attorney Hoffman made him a much greater flight risk than he had been at the time Judge Wolven set the bond at $1,000 weeks earlier.  As a result of this serious change in circumstances, Mr. Liston acted within the authority granted to him as a prosecutor under common law and state statute to order the increase in the plaintiff's bond to secure his presence in court for the prosecution of the criminal charges pending against him.

Under the common law, Connecticut's prosecutors were a part of the Judicial Branch of state government, but in 1984, an amendment to the Connecticut Constitution transferred the Division of Criminal Justice to the Executive Branch.  Article 23 of the Connecticut Constitution charges the Division of Criminal Justice with a simple mission:  ". . . to contribute to the due process of criminal law and achieve justice."  Consistent with the common law powers of prosecution, state's attorneys became constitutional officers mandated by the state charter to investigate and prosecute crime: "There shall be established within the executive department a Division of Criminal Justice which shall be in charge of the investigation and prosecution of all criminal matters in the Superior Court."  C.G.S. § 51-276.  Today, Connecticut prosecutors continue to follow a mandate derived from both common law and legislative statutes, which provides them with the jurisdiction to investigate and prosecute all criminal matters in the Superior Court. C.G.S. . §§51-277; 51-286a.

" The common law immunity of a prosecutor is based upon the same considerations that underlie the common-law immunities of judges and grand jurors acting within the scope of their duties.  These include concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his

decision instead of exercising the independence of judgment required by his public trust."
*Imbler v. Pachtman*, *supra*, 424 U.S. 409, 422-423.  A prosecutor's common law immunity was
equal to that afforded judges because both prosecutors and judges exercised a discretionary
judgment on the basis of evidence presented to them. *Barese v. Clark*, 62 Conn. App. 58, 773
A.2d 946, 949 (2001).  A prosecutor's immunity was thus derived from the same immunity that
attached to judicial proceedings under the common law. *DeLaurentis v. New Haven*, 220 Conn.
225, 241, 597 A.2d 807 (1991).  It is this same need for independent judgment which resulted in
prosecutors being referred to as "quasi-judicial" officers, and their immunities being termed
"quasi-judicial" as well.  *Imbler v. Pachtman*, *supra*, at 423 n.20.  "It is in part due to the
recognition that prosecutors are an integral part of the judicial system that courts have granted
absolute immunity from civil actions to prosecutors[]", even if doing so leaves a truly wronged
individual without recourse.  *Malley v. Briggs*, 475 U.S. 335, 342, 106 S.Ct. 1092, 89 L.Ed 2d
271, (1986); *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949); *Imbler v. Pachtman, supra*,
424 U.S. 409, 428.

**B.      As A State's Attorney, Mr. Liston Had The Authority In The
         Prosecution Of Cases To Ensure The Plaintiff's Appearance In Court**

        In this case, there is no dispute that at all times relevant to the plaintiff's allegations Mr.
Liston was acting in his capacity as a State's Attorney for the State of Connecticut.  There is also
no dispute that Mr. Liston, in this capacity had the authority through the common law and the
Division of Criminal Justice to investigate and prosecute all criminal matters in the Connecticut
Superior Court. C.G.S. § 51-276[6]; *State of Connecticut v. Dills*, 19 Conn. App. 495, 563 A.2d

---

[6] Conn. Gen. Stat. Sec. 51-276. Division established.  There is hereby established the division of Criminal Justice within the Executive Department, which shall be in charge of the investigation and prosecution of all criminal matters in the superior Court.  The Division of Criminal Justice shall be an agency within the Executive Department with all management rights except appointment of all state's attorneys.

733, 736 (1989). As a State's Attorney, Mr. Liston was accorded the power and duty to *take all steps necessary and proper* to prosecute all crimes and offenses against the laws of the state . . . .". C.G.S. § 51-277(a) & (b)[7] (emphasis added). Mr. Liston was equally qualified to act in any judicial district in the State in connection with any matter regardless of the judicial district where the offense took place. C.G.S. § 51-281.[8]

Mr. Liston had the "power and duty to take all steps necessary and proper" to prosecute all the criminal charges pending against the plaintiff. C.G.S. § 51-277(a) & (b). But, the plaintiff could not be prosecuted if he failed to appear in court. The plaintiff had made a serious threat against the life of Assistant State's Attorney Hoffman which significantly increased his risk of flight. The plaintiff was already under arrest on a Failure to Appear, which Mr. Liston had no involvement in, had two pending motor vehicle cases pending against him, was awaiting arraignment on the Failure to Appear charge, and was in violation of his probation. Clearly, coupled with the threats to Attorney Hoffman's life, the plaintiff was a serious flight risk. However, Mr. Liston was unable to alert the court to the change in circumstances. So, he acted in accordance with his authority and informed Trooper Moysey that he was increasing the bond from $1,000 to $250,000 on his authority, due to his increased risk of flight because of the threat to Attorney Hoffman. Mr. Liston raised the plaintiff's bond solely to secure the plaintiff's appearance in court the following business day due to the increased risk of flight he posed. By this action, Mr. Liston took "all the steps necessary and proper to prosecute [the plaintiff] on all

---

[7] Conn. Gen. Stat. Sec. 51-277 Power and rules of division. (a) The division shall exercise all powers and duties with respect to the investigation and prosecution of criminal matters conferred upon or required of it by this chapter, or conferred upon or required of state's attorneys, assistant state's attorneys and deputy assistant state's attorneys of the superior Court by the common and statutory law of this state. (b) The division shall take all steps necessary and proper to prosecute all crimes and offenses against the state and ordinances, . . . or authority."

[8] Conn. Gen. Stat. Sec. 51-281. Jurisdiction of prosecutorial officials. The Chief State's Attorney and each deputy state's attorney, state's attorney, assistant state's attorney and deputy assistant state's attorney shall be qualified to act in any judicial district in the state and in connection with any matter regardless of the judicial district where the offense took place, and may be assigned to act in any judicial district at any time on designation by the Chief State's Attorney.

crimes and offenses" pending against him by ensuring his appearance in court. C.G.S. § 51-277(a) & (b).  This is the purpose of bond, which is "the mechanism for securing a prisoner's availability for prosecution."  *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1150, (2d Cir. 1995); C.G.S. § 51-277(a) & (b).

When the Hon. Judge Wolven learned the following Monday (July 30, 2001) of the threats made against the life of Assistant State's Attorney Hoffman, she found them to be "not only serious, but incredibly disturbing". Exhibit H, pg. 13, lines 19-20.  When the plaintiff was arraigned that same day on new charges of Threatening and Disorderly Conduct, based upon the threat to Attorney Hoffman, Judge Wolven also believed it necessary to increase the bond of $100,000 set by Judge Parker to the same $250,000 amount set by Mr. Liston, to ensure the plaintiff's appearance in court.  She also set a variety of bonds on his other criminal cases which totalled $267,000.  The $250,000 bond on the Threatening charge remained in place until November, 2001, despite the filing of a motion by Ms. Chace to reduce the bond on the ground that it was excessive.  His motion for the reduction of bond was denied by the court on September 19, 2001.  In fact, by way of that motion, and her comments to the court on July 30, 2001, Ms. Chace made the identical argument to Judge Wolven that the plaintiff makes in his Complaint.  Exhibit M.  She argued at length that Mr. Liston lacked the authority to set bond and that this constituted a violation of the plaintiff's constitutional rights.  Judge Wolven rejected the plaintiff's arguments without commnet.  Judge Wolven's silence on the matter demonstrates that she recognized Mr. Liston's authority to increase the plaintiff's bond, or at the very least, believed that he acted reasonably under the circumstances.  By setting the bond in the same $250,000 amount, based upon the same circumstances, Judge Wolven essentially ratified the action taken by Mr. Liston.  Furthermore, it is clear that if Mr. Liston had been able to bring the change in circumstances to the attention of Judge Wolven on Friday July 27, 2001, the

circumstances for the plaintiff would have been the same – he would have been held over the weekend on a $250,000 bond.

In order for the plaintiff to succeed in his claims against Mr. Liston, he must prove that by increasing the bond without the court's permission, he acted "in the clear absence of all jurisdiction". *Barr v. Abrams*, *supra, at* 361. Because he cannot, his claims must fail. The facts and law demonstrate that Mr. Liston had jurisdiction under both the common law and state statutes, or at the very least, a semblance of jurisdiction to act as he did. His role of increasing the plaintiff's bond was "functionally comparable to that of a judge[,]" he had the jurisdictional basis to do so under C.G.S. §§ 54-63d(d) & 54-63c, and his order to Trooper Moysey and later Sgt. Kelly of the Connecticut State Police to increase the bond "constitute[d] legal advice during the judicial phase of the criminal process … in his advocacy role on behalf of the State of Connecticut". *Sanchez v. Doyle*, 254 F. Supp 266, 271, 274 (2d Cir. 2003). Therefore, Mr. Liston is entitled to absolute prosecutorial immunity.

The  Second Circuit, concerned about the potential for erosion to a prosecutor's immunity, adopted the warnings of *Imbler* by expressly rejecting the idea that a prosecutor loses immunity when state law does not expressly empower a prosecutor to act. In *Barr v. Abrams*, 810 F. 2d 358, (2d Cir. 1987), the Second Circuit ruled that "a crabbed reading of *Imbler*, and a holding that a prosecutor is without absolute immunity the moment he strays beyond his jurisdictional limits, would do violence to its spirit." *Id. at* 361, (quoting *Thomas v. County of Putnam*, 257 F.Supp. 2d 711, 715 (S.D. N.Y. 2003)). The *Barr* court held that the purpose of the immunity rule was to give public officials "a protected area of discretion within which to carry out their responsibilities" and  it feared that a contrary ruling would "cause a deflection of the prosecutor's energies from his public duties" and force him to "shade his decision instead of exercising the independence of judgment required by his public trust." *Id*. (citing *Imbler*, 424

U.S. at 423).

Accordingly, as the facts and law herein demonstrate, Mr. Liston did not violate the rights of the plaintiff, as he had the authority under the common law and state statutes to act as he did. However, even if the plaintiff's rights were violated, Mr. Liston is nevertheless entitled to absolute prosecutorial immunity, because he did not act in the "clear absence of all jurisdiction" when, in his role as an advocate for the State of Connecticut he raised the plaintiff's bond to ensure his appearance in court after he threatened to kill Assistant State's Attorney Hoffman.

## II.    ANY HARM TO THE PLAINTIFF BY THE BOND INCREASE WAS DE MINIMIS

Finally, the harm the plaintiff alleges he suffered as a result of Mr. Liston's actions was, if anything, de minimis. The plaintiff suffered no more harm that he would have if he had been arrested on "speedy information" and held without bond, as Mr. Liston was clearly authorized to do under C.G.S. § 54-63d(d). And if Mr. Liston had been able to alert the court on Friday to the threats the plaintiff made against Attorney Hoffman, it is clear by the actions taken by Judge Wolven the following Monday that the plaintiff would have been held over the weekend on the same $250,000 value bond set by Mr. Liston. In addition, because of the safeguards in the legislative scheme, the plaintiff's rights were adequately protected against any constitutional violations, which were intended to reduce the need for private damage actions such as this one. *Sanchez v. Doyle*, 245 F. Supp. 2d 266, 273 (2d Cir. 2003). Indeed, under Conn. Gen. Stat. §§ 54-63c(a) & 54-63d(a), should a prosecutor authorize delaying an arrested person's release pursuant to C.G.S. § 54-63d(d), such delay only lasts "until a hearing can be had before the court then sitting for the geographical area … or, if the court is not then sitting, until the next sitting of the court." *Id.* And this is exactly what occurred in this case. Therefore, because the plaintiff

suffered no more violation of his rights than a person arrested on "speedy information", and was accorded the same rights, summary judgment should be entered for Mr. Liston.

III.    **DEFENDANT LISTON IS ENTITLED TO QUALIFIED IMMUNITY**

In the simplest terms, if State's Attorney Timothy Liston is not entitled to prosecutorial immunity, then he is entitled to qualified immunity, because (1) the law was not clearly established that he did not have the authority to act as he did, and (2) he acted with "objective reasonableness" when he increased the court set bond for the plaintiff. Indeed, "unless a prosecutor proceeds in the clear absence of all jurisdiction, absolute immunity exists for those prosecutorial activities intimately associated with the judicial phase of the criminal process. Conversely, where a prosecutor acts without any colorable claim of authority, he loses the absolute immunity he would enjoy. In such a case, however, he remains protected by the shield of qualified immunity recognized by *Harlow*." *Barr v. Abrams*, 810 F.2d 358, 361 (2d cir. 1987) Accordingly, Mr. Liston is entitled to qualified immunity. *Saucier v. Katz*, 121 S.Ct. 2151, 150 L.Ed 2d 272 (2001); *Golino v. City of New Haven*, 950 F.2d 864, 870 (2nd Cir. 1991).

The defense of qualified immunity is a well settled doctrine that protects government officials from civil suits arising from the performance of their discretionary functions when that performance "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Immunity ordinarily should be decided by the court. *Id.*, (*quoting Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1989). Indeed, the Supreme Court has expressly encouraged the use of summary judgment when qualified immunity is raised as a defense. *Saucier v. Katz*, 121 S.Ct. 2151, 150 L.Ed 2d 272 (2001); *Carter v. Lussier*, 955 F.2d 841, 844 (2nd Cir. 1992). The objective reasonableness test was

designed to facilitate this summary device as a means quickly to extricate government officials from defending insubstantial suits. *Harlow*, at 815-16, 102 S.Ct. at 2736-37.

Qualified immunity for government officials serves not only as a defense from liability, but also to spare public officials from shouldering the burdens and expenses of litigation. *Saucier v. Katz*, 121 S.Ct. 2151, 150 L.Ed 2d 272 (2001); *Cartier v. Lussier*, 955 F.2d 841, 844 (2nd Cir. 1992). If public officials were not protected from the threat of frivolous suits, the cost to society would be substantial, ranging from an inability to attract qualified candidates to serve in public positions, to a diversion from the discharge of official duties and towards the avoidance of litigation, to inhibiting the zealous performance of official obligations. *See Harlow*, at 814, 102 S.Ct. at 2736, 73 L.Ed.2d 396.

As a general rule, prosecutors are entitled to qualified immunity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their actions did not violate those rights. *Oliviera v. Mayer*, 23 F.3d 642, 648 (2nd Cir. 1994).

In this case, Mr. Liston did not knowingly violate the plaintiff's constitutional rights by increasing his bond, because he believed that as a State's Attorney he had the authority under both the common law and the Connecticut General Statutes that he had the authority to act as he did. Indeed, C.G.S. § 54-63d(d) expressly provides a prosecutor with the authority to hold an arrested person in custody if the Bail Commissioner seeks to reduce the bond set by the police, and C.G.S. § 54-63c prohibits a police officer only, from modifying a bond set by a court. The fact that the Connecticut legislature did not expressly prohibit a prosecutor from modifying a bond set by a court or judge, supports Mr. Liston's contention that he believed he had the authority to act as he did. On the date that gave rise to this incident, Mr. Liston had been a prosecutor for over twenty years. During that period he was involved in many instances where he set or advocated for the setting of a criminal defendant's bond, and at no time was his

16

authority to do so ever questioned or rebuked.  The salient question thus becomes whether Mr. Liston had notice that he lacked the authority to act as he did.  Clearly, as the facts demonstrate, it cannot.  *Lennon v. Miller*, 66 F.3d 416, 421 (2nd Cir. 1995).

As the facts and law recited herein and in the Statement of Facts demonstrates, it would not be "clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Suacier v. Katz*, 533 U.S. 194, 150 L. Ed. 272, 121 S.Ct. 2151, 2156 (2001).  Where there is ambiguity, the law cannot be clear.  Therefore, he could not have been on notice that by acting as he did, he was violating the plaintiff's constitutional rights under the Fourth, Eighth, or Fourteenth Amendments. *Cruz v. Kauai County*, 279 F.3d 1064, 1067 (9th Cir. 2002) (an objectively reasonable person in the prosecutor's position could not have known that he may have been acting in violation of the plaintiff's constitutional rights by attaching an affidavit to a motion in a bail revocation hearing).  Thus, since the rights asserted by the plaintiff were not "clearly established", Mr. Liston is entitled to qualified immunity. *Id*.

In the alternative, even if the law was clear that Mr. Liston did not have the authority to increase the court set bond, he is still entitled to qualified immunity, because his belief that he had the authority to act was objectively reasonable.  This second prong of the doctrine of qualified immunity leaves "ample room for mistaken judgments," and protects "all but the plainly incompetent or those who knowingly violate the law." *McCleary v. Navarro*, 504 U.S. at 967, 112 S.Ct. at 2324.  "Because many situations which confront [officials] in the course of their duties are more or less ambiguous, room must be allowed for some mistakes on their part.  But, the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. *Brinegar v. United States*, 388 U.S. 160, 176 (1940).  Thus, even if Mr. Liston was mistaken, his judgment was not so incompetent or violative to remove it from the

cloak of qualified immunity. *Saucier v. Katz*, 121 S.Ct. 2151, 150 L. Ed. 272 (2001).

When reviewing a motion for summary judgment based upon qualified immunity, a court should put aside allegedly false material, supply any omitted information, and then determine whether the facts would have supported a finding that the actions of the defendant were those of a reasonable person under the same circumstances. *Soares v. State of Connecticut*, 8 F.3d 917, 920 (2nd Cir. 1993)(citations omitted). If the actions were reasonable, qualified immunity is deserved. *Id.*

Clearly, in light of the circumstances Mr. Liston encountered on Friday, July 27, 2001, it was objectively reasonable for him to believe that he had the authority as a State's Attorney to change the court set bond on the plaintiff's Re-arrest Warrant to ensure his appearance in court after he learned that the plaintiff had threatened the life of Assistant State's Attorney Hoffman. Indeed. An indication that his judgment was correct was reflected in Judge Wolven's failure to comment about any alleged impropriety by Mr. Liston's act of increasing the plaintiff's bond, despite a lengthy argument by Ms. Chace to the contrary. Judge Wolven did comment that she found the threat to be serious and incredibly disturbing, and set the bond at $250,000 to reflect the plaintiff's risk of flight. But, the fact that she set the $250,000 bond on the Threatening and Disorderly Conduct charges and not the Re-arrest Warrant as Mr. Liston had, is irrelevant, because the warrant for the new charges had not yet been drafted at the time Mr. Liston increased the bond. However, the underlying facts which warranted the high bond were the same. In fact, the arrest warrant actually affirmed the credibility of the information Mr. Liston had when he deemed it necessary to increase the bond to ensure the plaintiff's appearance in court. By her statements and actions Judge Wolven clearly recognized that Mr. Liston was acting within his authority as a State's Attorney when he increased the bond, and that the increase he selected was

proper under the circumstances.

When determining the applicability of this second prong of qualified immunity, the Court need only determine the "objective legal reasonableness" of Mr. Liston's action in raising the bond under the circumstances. *Anderson v. Creighton*, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). Mr. Liston clearly had an arguable belief that he had the authority to increase the plaintiff's bond. Given the totality of the circumstances, Mr. Liston did not act unreasonably, especially since it cannot be said that *no* reasonable prosecutor *could* have believed that they had the authority to increase the bond of the plaintiff under the same circumstances. Qualified immunity is thus due.

Therefore, in the event this Court determines that Mr. Liston's action is not protected by prosecutorial immunity, he is still entitled to qualified immunity, because (1) the law was not clearly established that he lacked the authority to act as he did, or (2) that an objectivbely reasonable person in Mr. Liston's position could not have known that he may have been acting in violation of the plaintiff's rights. <u>Lennon v. Miller</u>, 66 F.3d 416, 421 (2nd Cir. 1995). As the facts and law demonstrate, State's Attorney Timothy Liston is entitled to qualified immunity as a matter of law and this court should enter summary judgment in his favor.


### IV.    THE PLAINTIFFS' EMOTIONAL DISTRESS CLAIMS ARE WITHOUT MERIT

It is well settled that, in order to state a claim of intentional infliction of emotional distress, "[i]t must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff[s] was severe." <u>Petyan v. Ellis</u>, 200 Conn. 243, 253, 510 A.2d 1337 (1986) (Internal quotation marks omitted).

Whether the defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy either of these elements is a question, in the first instance, for this Court.  Only if reasonable minds could differ, does the question become an issue for the jury to decide.  *Id.* (quoting *Mellaly v. Eastman Kodak Company*, 42 Conn. Sup. 17, 18, 597 A.2d 807 (1991).

Extreme and outrageous conduct is an essential element in the tort of intentional infliction of emotional distress.  Mere insults, indignities, or annoyances that are not extreme and outrageous will not suffice.  *Biro v. Hirsch,* Docket No. CV0314442S, 1998 WL 59499 (Conn. Super. 1998), slip op. at 6 (citations omitted).  Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very *serious* kind. *DeLaurentis v. New Haven,* 220 Conn. 225, 267, 597 A.2d 807 (1991)(Emphasis added).

One Connecticut Superior Court decision provides a useful analysis of cases from Connecticut and other jurisdictions which employ the same standard:

> . . . For the tort of intentional infliction of emotional distress to be established, . . . the plaintiff must allege and prove conduct considerably more egregious than that experienced in the rough and tumble of life ....  Liability exists only for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause mental distress of a very serious kind.  [A] line can be drawn between the slight hurts which are the price of a complex society and the severe mental disturbances inflicted by intentional actions wholly lacking in social utility.  Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.
>
> Some courts called upon to determine whether there is a reason to let a jury decide whether alleged conduct could be found to meet "outrageous" standard have focused on objective criteria such as whether the defendant knew of some special susceptibility

> to emotional abuse on the part of the plaintiff. Some cases have
> looked to whether there is a lengthy or continuous pattern of
> harassment conduct over time. Single incidents, even if false
> accusations, are almost never found by courts to be outrageous. In
> *Whelan v. Whelan,* 41 Conn. Sup. 519 (1991), what may have been
> a single incident, was held sufficient to show outrageousness, but
> that case involved a falsehood designed to instill a fear of death.

*Lucas v. Firine,* No. CV 92-0335703, 1993 Conn. Super. LEXIS 1777 (1993). The *Whelan* case

cited above is clearly distinguishable from the facts in this case. This case does not fall into any

fact pattern or category which could be deemed outrageous, as the actions here, even if though

allegedly without lawful authority, do not go "beyond all possible bounds of decency". Indeed,

no reading of the facts constitute behavior by Mr. Liston which could be deemed "so outrageous

in character, and so extreme in degree . . . to be regarded as atrocious, and utterly intolerable in a

civilized community." *Id.*

  Mr. Liston's action was warranted given the seriousness of the threat to Assistant State's

Attorney Hoffman. He acted within his authority as a State's Attorney and as such, the

plaintiff's claim of serious emotional distress is without merit. As set forth herein, Mr. Liston's

increase in the plaintiff's bond, even with its resultive three day incarceration of the plaintiff, did

not constitute an act "beyond all possible bounds of decency", or "atrociously and utterly

intolerable" conduct. *Id.* Consequently, the plaintiff's emotional distress claim must be

dismissed.. *Brown v. Ellis,* 40 Conn. Sup. 165, 168, 484 A.2d 944 (1984), *citing,* Restatement

(Second) of Torts § 46, comment g.


  **V.**  <u>**SUPPLEMENTAL STATE LAW CLAIMS**</u>

  For all of the foregoing reasons, the plaintiffs' federal claims pursuant to 42 U.S.C.

§ 1983 should be dismissed as a matter of law, as should his supplemental state law claims. In

the event this Court does not dismiss the pendent state law claims on the merits, it should dismiss

the claims for a lack of jurisdiction. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 1139, 16 L.Ed. 218 (1966).

## VI.     CONCLUSION

For all of the foregoing reasons, judgment should be rendered in favor of the Mr. Liston, in this matter. Under both the common law and the Connecticut General Statutes, he had the jursidictional authority as a State's Attorney to increase the bond set for the plaintiff to ensure his appearance in court, and acted in his advocacy role as a prosecutor by doing so. At a minimum, because Mr. Liston did not act in a clear absence of jurisdiction, he is entitled to absolute prosectuorial immunity. Moreover, any harm that the plaintiff allegedly suffered was de minimis, as the same result would have befallen him had Mr. Liston had the opportunity to put the change in circumstances before the court on Friday, July 27, 2001, or had the plaintiff been arrested on "speedy information".

Furthermore, in the event this Court denies Mr. Liston the protection of absolute prosecutorial imunity, he is nontheless entitled to qualified immunity, because the law was not clearly established that he lacked the authority to act as he did, and his action in doing so under the circumstances was reasonable.

Accordingly, Mr. Liston respectfully requests that this Court grant him summary judgment on the plaintiff's federal claims as a matter of law.

DEFENDANT
Timothy Liston

RICHARD BLUMENTHAL
ATTORNEY GENERAL


BY:___/s/_____
Robert B. Fiske, III
Assistant Attorney General
110 Sherman Street
Hartford,  CT  06105
Tel:  (860) 808-5450
Federal Bar No. #ct17831
E-mail: robert.fiske@po.state.ct.us


## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed to the following on this the 14th

day of June, 2004:

Mr. Norm Pattis, Esq.
Williams & Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT 06510


___/s/_____
Robert B. Fiske, III
Assistant Attorney General

23