UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EDWARD ROOT | : | 3:03CV00949(JCH) |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| TIMOTHY LISTON | : | |
| *Defendant* | : | JUNE 11, 2004 |

## THE DEFENDANT'S STATEMENT OF UNDISPUTED FACTS

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56 of the Local Rules of Civil Procedure, the defendant, State's Attorney Timothy Liston files this statement of undisputed material facts in support of his Motion for Summary Judgment.

1.  Timothy Liston became an prosecutor in the State of Connecticut in August, 1977. Exhibit A[1], para. 3. In July, 2001, he was appointed State's Attorney of the Judicial District of Middlesex. Exhibit A, para. 4; Exhibit B[2], pg. 5. The Judicial District of Middlesex includes the Superior Court in Geographical Area Number 9 at Middletown, (hereinafter referred to as "G.A. 9"). Exhibit A, para. 4.

---

[1] Exhibit A: Affidavit of Timothy Liston.
[2] Exhibit B: Deposition of Timothy Liston, taken April 16, 2004.

2. On June 9, 2001, the plaintiff, Mr. Edward Root, was arrested for Operating Under Suspension, in violation of C.G.S. §14-215, Operating Without Insurance, in violation of §14-213b, and Expired Emission Sticker, in violation of §14-164c(j). These charges became Docket number MV9-411899. The plaintiff's first court appearance date for these charges was scheduled for June 27, 2001 in G.A. 9, but was continued to July 18, 2001. Exhibit A, para. 5.

3. Then, on July 13, 2001, the plaintiff was again arrested, this time for Operating Under Suspension, in violation of C.G.S. §14-215, Operating without Insurance, in violation of §14-213, and Operating an Unregistered Motor Vehicle, in violation of §14-12a. Exhibit A, para. 6. These new charges became Docket number MV9-412077, and the plaintiff was given a court appearance date of July 27, 2001 in G.A. 9. Exhibit A, para. 6.

4. On July 18, 2001, the plaintiff was not present in court at G.A. 9 when his case, Docket MV9-411899 was called, so the Honorable Judge Carol Wolven ordered a Re-arrest for Failure to Appear, and set a bond in the amount of one thousand, ($1,000), dollars. Exhibit A, para. 7. On July 20, 2001, the Re-arrest warrant was signed by Judge Wolven for the original three charges and an additional count of Failure to Appear in the Second Degree, pursuant to C.G.S. §53a-173. Exhibit C[3]. On July 24, 2001, Attorney Diane Chase filed an Appearance and a Motion to Vacate Re-Arrest. Exhibit D[4].

5. On the morning of Friday, July 27, 2001, Mr. Liston was at the Chief State's Attorney's Office in Rocky Hill, not at G.A. 9. Exhibit A, para. 8. At approximately 11:00 a.m., he arrived at his office in the Middletown Superior Court. Exhibit A, para. 8. Soon after he arrived in his office, he was advised by Supervisory Assistant State's Attorney John Cashmon

---

[3] Exhibit C: Re-arrest warrant with additional count of Failure to Appear.
[4] Exhibit D: Appearance and Motion to Vacate Re-Arrest filed by plaintiff's Defense Attorney, Diane Chase

2

and Senior Assistant State's Attorney Barbara Hoffman, both of G.A. 9, that the Middletown Police had received a 911 telephone call that Edward Root had threatened to kill Assistant State's Attorney Barbara Hoffman. Exhibit A, para. 8. They further advised him that the plaintiff had a motor vehicle case on the docket that day, (Dkt. MV9-412077), and that there was an outstanding warrant for the plaintiff for Failure to Appear in the Second Degree. Exhibit A, para. 8. They also told him that the plaintiff had been in the courthouse earlier that morning, before Mr. Liston had arrived, but had left the courthouse after being told that the Re-arrest warrant would be served. Shortly after that, Middletown Police alerted Attorney Hoffman to the threat against her. Exhibit A, para. 8.

      6.     Mr. Liston knew who Mr. Root was from a case in the early 1990's when he prosecuted him for two felonies upon which Mr. Root was acquitted after a jury trial. Exhibit A, para. 9; Exhibit B, pg. 7, lines 16-25; Pg. 8, line 1. Since then, Mr. Liston had no contact with Mr. Root and was not even aware that he had a pending case in G.A. 9 until he was told that morning about the threat to Assistant State's Attorney Hoffman by Senior Assistant State's Attorney Cashmon. Exhibit A, para. 9; Exhibit B, pg. 8, lines 12-25; pg. 9, lines 1-8.

      7.     After learning of the threat to A.S.A. Hoffman's life, Mr. Liston contacted Middletown Police Sergeant Amy Pear and a 911 dispatcher who told him that 911 had received a telephone call from a phone booth at Middlesex Hospital from a then unidentified female caller who said, amongst other things, that Edward Root had threatened to kill Prosecutor Barbara Hoffman because she had been trying to take him down for fifteen years. The caller would not reveal her identity because of client confidentiality. Exhibit A. para. 10.

      8.     After speaking with these persons, Mr. Liston was told by Assistant State's Attorneys Cashmon and Hoffman that the plaintiff was currently on probation with special

3

conditions, including substance abuse counseling, as a result of either a DUI conviction or Operating Under Suspension as a result of a DUI. Exhibit A, para. 11. Based upon this information, Mr. Liston believed that the plaintiff might have made the threat during a contact with a counselor or therapist and the 911 caller was alerting authorities to future dangerous behavior of the plaintiff. Exhibit A, para. 11.

  9. At approximately 11:20 am, Mr. Liston notified the Connecticut State Police Troop F Westbrook of the threat and requested an investigation be commenced immediately. Exhibit A, para. 12; Exhibit B, pg. 11, lines 4-6. Detectives were assigned to the matter and Mr. Liston was told that they would be at the G.A. 9 Courthouse around 1:00 p.m. Exhibit A, para. 12. After speaking with the state police, Mr. Liston learned that the plaintiff had returned to the courthouse for his court case but was taken into custody by the Middletown Police before the case was called. Exhibit A, para. 12. He had observed the Middletown Police taking a person out of the courthouse who he presumed was the plaintiff. Exhibit A, para. 12.

  10. Mr. Liston was told that the Failure to Appear Warrant was from a Connecticut State Police Troop K, (Colchester), case, but that the Warrant itself was at the G.A. 9 Courthouse, so the Middletown Police had the warrant and were holding Mr. Root for a trooper to pick him up for processing. Exhibit A, para. 13.

  11. Because of the lateness of the morning, by the time the plaintiff was taken into custody by the Middletown Police it was too late for a trooper to process his arrest on the warrant and return him to G.A. 9 for the 12:00 arraignment docket, per the policy of the Administrative Judge for the Middlesex Judicial District. Exhibit A, para. 14. As a result, the plaintiff was

processed on the F.T.A. arrest in Middletown then returned to the State Police Troop K barracks in Colchester where he was held on the bond. Exhibit E[5].

12.     At approximately 11:40 a.m., Mr. Liston received a telephone call from Trooper Moysey of Troop K who told him that he was at the Middletown Police Department and had placed the plaintiff under arrest on the Failure to Appear Warrant which had a one thousand dollar bond. Exhibit A, para. 15.

13.     Mr. Liston told Trooper Moysey of the threat made against Assistant State's Attorney Barbara Hoffman and that a criminal investigation had been commenced by the Connecticut State Police at Troop F. Exhibit A, para. 16; Exhibit E. Mr. Liston told him that it was too late for an arraignment on the Failure to Appear Warrant and that Troop F detectives were on their way to interview the plaintiff. Exhibit A, para. 16. Mr. Liston also told Trooper Moysey that because of the plaintiff's threat, the danger to Ms. Hoffman, and the plaintiff's increased flight risk, the bond was to be increased from one thousand, to two hundred and fifty thousand dollars, on his authority. Exhibit A, para. 16; Exhibit B, pg. 31. line 25; pg. 32, lines 1-7. He also instructed Trooper Moysey that the bond was not to be reduced and to contact him if a Bail Commissioner tried to reduce it as it was subject to review by the Bail Commissioner. Exhibit B, pg. 32, lines 2-7; Exhibit E.

14.     Mr. Liston believed it was within his authority as a Connecticut State's Attorney to increase the bond set for the plaintiff, especially given the threat against fellow prosecutor Barbara Hoffman and other factors. Exhibit A, para. 17; Exhibit B, pgs. 16, lines 10-25; pg. 17, pg. 18, pg. 19, lines 1-25. Mr. Liston believed that because (1) the threat was to kill; (2) against an officer of the court; (3) and the plaintiff had a motive given that he was currently being

---

[5] Exhibit E: Connecticut State Police Continued Investigation Report K01-239806.

prosecuted for two motor vehicle cases; (4) he knew where Barbara Hoffman lived; (5) and he had access to firearms; (6) that he was a danger to the public; (7) and consequently was an increased flight risk, required an increase in his bond to ensure both the safety of Ms. Hoffman and ensure his presence in court for arraignment on the motor vehicle and Failure to Appear charges. Exhibit A, para. 17; Exhibit B, pgs 16, lines 10-25; pg. 17, pg. 18, pg. 19, lines 1-25. In addition, the plaintiff was in violation of his probation, and by his leaving the courthouse on July 27, 2001, he might have believed a second re-arrest warrant would be generated, thereby further increasing the plaintiff's hostility toward A.S.A. Hoffman. Exhibit A, para. 18; Exhibit B, pg. 19, lines 2-10.

      15.     To Mr. Liston, this combination of factors increased the risk that the plaintiff would not appear in court, since someone who has threatened to kill a member of the criminal justice system, whether a prosecutor, a judge, or juror, is probably not going to appear in court. Exhibit A, para. 19; Exhibit B, pg. 19, lines 10-15. It was because of the changed circumstances, the increased risk to Ms. Hoffman and the public that he believed an increase in the bond was merited. Exhibit A, para. 19; Exhibit B, pg. 19, lines 15-18.

      16.     Also at this time, Mr. Liston was personally aware of several recent instances of violence by criminal defendants against participants in the criminal justice system, including an individual who was out on bond awaiting trial on a burglary case who killed the primary witness against him, and while the homicide investigation was in progress, threatened another witness and shot two police officers; in another case, a defendant had threatened to kill his probation officer after confessing to a murder; and in another case, a police officer was killed during a motor vehicle pursuit of a fleeing burglar. Exhibit A, para. 20; Exhibit B, pg. 18, lines 2-25; pg. 19, pg. 1.

6

17. Mr. Liston was unable to bring this new information to the attention of the Court for a judicially approved increase in the $1,000 bond set on the plaintiff's Re-arrest warrant on Friday, July 27, 2001, because the Re-arrest was not on the docket, so there was no case for Mr. Liston to bring before the Court, and it was too late in the day for arraignments. Exhibit A, para. 21; Exhibit B, pg. 19, lines 23-25; pg. 20, lines 7-18.  In addition, the Court's procedure required a motion to be filed with the court seeking a change in the bond in a pending case, but without the case on the docket, there was no way to have it heard.  Exhibit A, para. 21; Exhibit B, pg. 20, lines 7-18.

18. Under the circumstances known to Mr. Liston at this time, he believed that as a State's Attorney, he had the authority to set a bond in addition to that which the court had set. Exhibit A, para. 19, 22; Exhibit B, pg. 16, lines 3-17.  The changes in circumstances created a different situation that increased the likelihood of the plaintiff's nonappearance and also created a danger to Ms. Hoffman and the public, which was not present when the Court set the bond at $1,000.  Exhibit A, para. 17, 19, 22; Exhibit B, pg. 16, lines 10-17.

19. Also, this was not the first time that Mr. Liston had input into the amount of bond set by a judge. Exhibit A, para. 22; Exhibit B, pg. 25, lines 16-19.  Nor was it the first time he had increased the bond set by a judge due to a change in circumstances after the fact, as existed in this case. Exhibit A, para. 22; Exhibit B, pg. 26, lines 17-21; pg. 27, lines 22-25; pg. 28, lines 1-8. Numerous times in his role as a prosecutor he had asked a judge to set a bond on a warrant, made arguments to the court for setting bond, and given the police advice on the amount of bond to set for individual both before and after arrest.  Exhibit A, para. 22; Exhibit B, pg. 25, lines 16-25; pg. 26, lines 1-16.

20. At approximately 1:00 p.m. on Friday, July 27, 2001, Connecticut State Police Detective Buglione interviewed the plaintiff, Mr. Root, regarding the alleged threat made against prosecutor Barbara Hoffman. Exhibit F[6], pg. 48, lines 11-18. The plaintiff denied making any threat. Exhibit G[7], para. 7.

21. On Saturday, July 28, 2001, at approximately 4:30 p.m., Mr. Liston received a telephone call from Sgt. Kelly at the Connecticut State Police, Troop K, who advised him that Ms. Diane Chace, the plaintiff's attorney, and a bondsman, wanted to post the $1,000 bond on the Failure to Appear Warrant and he was calling him about the higher bond. Exhibit A, para. 23. Mr. Liston explained to Sgt. Kelly that the plaintiff had threatened to kill Ms. Hoffman, that he had both the motive and ability to carry it out, and that as a result, there was both a danger to Ms. Hoffman and an increased risk of flight which required an increase in his bond to $250,000. Exhibit A, para. 23.

22. Mr. Liston then spoke with Connecticut State Police Detective Anthony Buglione, who was investigating the threatening complaint, Det. Buglione advised that on Friday evening, July 27, 2001, he spoke with Mr. Root's ex-wife Jean Graham. Ms. Graham reported that Mr. Root had been at her residence in the early morning hours of July 27, 2001, and talked about killing police officers and Assistant State's Attorney Hoffman, Ms. Graham reported this to her social worker who made the 911 call. Det. Buglione was going to obtain written statements from Ms. Graham and the social worker, and then prepare an Arrest Warrant Application and Affidavit on Monday July 30, 2001, on charges of Threatening and Disorderly Conduct. Mr. Root's arraignment and that Arrest Warrant Application would be handled by a prosecutor from the Chief State's Attorney's Office. Exhibit A, para. 24.

---

[6] Exhibit F: Plaintiff's deposition, taken March 12, 2004.

23. At approximately 7:00 p.m., Mr. Liston called Sgt. Kelly. Exhibit A, para. 25. Sgt. Kelly reported that Ms. Chace was very upset and may come to Troop K to obtain the release of her client, claiming that neither the police or Mr. Liston had the authority to increase the plaintiff's bond which had been set by the Court. Exhibit A, para. 25. Mr. Liston advised Sgt. Kelly not to release the plaintiff unless he posted the new bond and to tell Ms. Chace that she could argue for lower bond in court Monday morning, but that he was acting within his Constitutional and Statutory authority as a prosecutor in raising the plaintiff's bond. Exhibit A, para. 25. The plaintiff was subsequently unable to post the increased bond and was transported to court the following Monday, July 30, 2001. Exhibit F, pg. 55, lines 3-9; pg. 56, lines 3-5.

24. On Monday, July 30, 2001, an Arrest Warrant based upon the Affidavit of Det. Buglione for the arrest of the plaintiff on the charges of Threatening and Disorderly Conduct arising out of the threat to Attorney Hoffman was signed by the Honorable Judge Parker who set the bond on the warrant at $100,000. Exhibit A, para. 26; Exhibit B, pg. 13, lines 6-14; pg. 33, lines 3-13. Exhibit G.

25. In the early afternoon of the same day, the warrant was served upon the plaintiff in the court cellblock, after which the plaintiff was arraigned before the Honorable Judge Wolven on both the F.T.A. and Threatening charges. Exhibit B, pg. 33, lines 12-18; Exhibit F, pg. 59, lines 17-25; pg. 60, lines 1-4; Exhibit H[8], pg. 8, lines 1-27. At the arraignment, the plaintiff's attorney Ms. Chace made a lengthy argument against the action of Mr. Liston in

---

[7] Exhibit G: Arrest Affidavit for Threatening and Disorderly Conduct, by Det. Buglione.
[8] Exhibit H: Court Transcript of Superior Court Judge Carol A. Wolven, July 30, 2001.

9

raising the Court's bond of $1,000 to $250,000, alleging that it was improper, without legal authority, and in violation of the plaintiff's civil rights. Exhibit H, pgs. 3–7. The Bail Commissioner then spoke in favor of a high bond and recommended that the bond on the Threatening charge be set at $250,000 and the F.T.A. at $1,000 based upon the plaintiff's criminal history and then pending criminal cases. Exhibit H, pg. 10, lines 1-24.

26. After hearing further comments from Ms. Chace, Assistant State's Attorney Sednesky of the Chief State's Attorney's Office and the Bail Commissioner on the bond, Judge Wolven found the allegations were not only serious, but "incredibly disturbing". Exhibit H, pgs. 2-7, 10-13; Exhibit G. Judge Wolven also expressed concern for the safety of the victim, Assistant State's Attorney Barbara Hoffman, and ruled the plaintiff to be a flight risk. Exhibit H, pg. 13, lines 19-24. Then, without any comment in response to the lengthy arguments of Ms. Chace, Judge Wolven acknowledged the legitimacy of Mr. Liston's bond increase on the Failure to Appear and set the bond on the new threatening charge, (Dkt. CR9-158228), at $250,000, with additional conditions. Exhibit A, para. 26; Exhibit H, pg. 13, lines 22-27; pg, 14, lines 1-2. Judge Wolven also affirmed the bond for the Failure to Appear on the motor vehicle Re-arrest file, (MV9-411899), at $1,000. Exhibit H, pg. 14; lines 1-7.

27. Mr. Liston was not involved in the Arrest Warrant or arraignment on July 30, 2001. Exhibit A, para. 27; Exhibit F, pg. 58, lines 7-11; Exhibit H, pg. 1. Rather, those matters were handled by Assistant State's Attorney Sedensky from the Chief State's Attorney's Office. Exhibit H, pg. 1, lines 1-6..

28. The plaintiff was unable to make the new Court set bond of $250,000. Exhibit F, pg. 59, lines 20-25; pg. 60, lines 1-9.

29. On August 7, 2001, Attorney Chace filed an Appeal/Petition for Review of the $250,000 Bond in CR9-158228. Exhibit I[9] On September 19, 2001, the Appellate Court ordered that the defendant's Motion for Review of Bail was Granted, but the Relief Sought was denied and the State's Motion to Dismiss the Appeal was granted. Exhibit J[10]

30. On September 4, 2001, the plaintiff was arrested pursuant to a warrant for Violation of Probation in MV9-407497 based upon a March 23, 2001 conviction for Operating Under Suspension, C.G.S. §14-215(c) which carried a sentence of six months execution suspended after thirty days, with a two year probation period and special conditions, including not operating a motor vehicle while under suspension. Exhibit K[11] pgs. 1–3.

31. On October 12, 2001, Attorney Pattis appeared for the plaintiff on the criminal charges of Threatening and Disorderly Conduct in Docket CR9-158228 and filed a Motion for Reduction of Bond on November 6, 2001. Exhibit F; Exhibit L[12] pg. 2. On November 29, 2001, the Honorable Judge Clifford granted Attorney Pattis' Motion for Reduction of Bond and reduced the bond from $250,000 to $100,000 with conditions. Exhibit L, pg. 3.

32. On November 29, 2001 the plaintiff secured his release upon posting a $100,000 Surety Bond in CR9-158228, a $1,000 Surety Bond in MV9-411899, a $100 cash bond in MV9-412077, and a $5,000 Surety bond in MV9-407497. Exhibit F, pg. 60, lines 17-25; pg. 61, lines 1-7.

33. On November 5, 2002, the plaintiff was convicted of Violation of Probation,

---

[9] Exhibit I: Ms. Chase's Appeal/Petition for Review of Bail, dated August 7, 2001.
[10] Exhibit J: Decision of Appellate Court, dated September 19, 2001.
[11] Exhibit K: Arrest warrant affidavit for Violation of Probation in MV9-407497
[12] Exhibit L: Attorney Norman Pattis Appearance & Motion for Reduction of Bond.

(MV9-407497), and the Honorable Judge O'Keefe imposed a five month sentence of incarceration. Exhibit F, pg. 62, lines 6-13; Exhibit K, pg. 4. One of the grounds for the VOP was the warrant affidavit for threatening Assistant State's Attorney Hoffman, but it was not pursued at the VOP Hearing. Exhibit K, pg. 2.

34.     The plaintiff's three remaining cases, (CR9-158228; MV9-411899; MV9-412077), are currently on the Jury List in G.A. 9 and are being prosecuted by the Chief State's Attorney's Office. Exhibit F, pg. 31, lines 6-24. Mr. Liston is not involved in those prosecutions in any capacity. Exhibit A, para. 27.

DEFENDANT
ASSISTANT STATE'S ATTORNEY
TIMOTHY LISTON

RICHARD BLUMENTHAL
ATTORNEY GENERAL


BY:  \_/s/_____
Robert B. Fiske, III
Assistant Attorney General
Federal Bar No. ct17831
110 Sherman Street
Hartford, CT  06105
Tel: (860) 808-5450
Fax: (860) 808-5493
E-mail: robert.fiske@po.state.ct.us

## CERTIFICATION

I hereby certify that a copy of the foregoing, was mailed in accordance with Rule 5(b) of the Federal Rules of Civil Procedure on this, the 14th day of June, 2004, first class postage prepaid to:

Mr. Norman Pattis, Esq..
Williams & Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT 06510


\_\_/s/_____
Robert B. Fiske, III
Assistant Attorney General