UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EDWARD ROOT | : | 3:03CV00949(JCH) |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| TIMOTHY LISTON | : | |
| *Defendant* | : | JUNE 8, 2004 |

### AFFIDAVIT OF STATE'S ATTORNEY TIMOTHY LISTON

I, TIMOTHY LISTON, having been duly sworn, deposes and says:

1. I am over eighteen years of age;

2. I understand the obligation of an oath;

3. I am a full time prosecutor for the State of Connecticut and have been since August, 1977.

4. In July, 2001, I was appointed State's Attorney of the Judicial District of Middlesex. The Judicial District of Middlesex includes the Superior Court Geographical Area Number 9 at Middletown, (hereinafter referred to as "G.A. 9"), Connecticut.

5. On June 9, 2001, the plaintiff, Mr. Root, was arrested for Operating Under Suspension, in violation of C.G.S. §14-215, Operating without Insurance, in violation of §14-213b, and Expired Emission Sticker, in violation of §14-164c(j). These charges became Docket

number MV9-411899.  The plaintiff's first court appearance date for these charges was scheduled for June 27, 2001 in G.A. 9, but was continued to July 18, 2001.

6.  On July 13, 2001, the plaintiff was again arrested, this time for Operating Under Suspension, in violation of C.G.S. §14-215, Operating without Insurance, in violation of §14-213, and Operating an Unregistered Motor Vehicle, in violation of §14-12a.  These new charges became Docket number MV9-412077, and the plaintiff was given a court appearance date of July 27, 2001 in G.A. 9.

7.  On July 18, 2001, the plaintiff was not present in court at G.A. 9 when his case, Docket MV9-411899 was called, so the Honorable Judge Carol Wolven ordered a Re-arrest for Failure to Appear, and set a bond in the amount of $1,000 dollars.  On July 24, 2001, Attorney Diane Chace filed an Appearance and a Motion to Vacate the Re-Arrest.

8.  On the morning of Friday, July 27, 2001, I was at the Chief State's Attorney's Office in Rocky Hill, not at G.A. 9.  At approximately 11:00 a.m., I arrived at my office in the Middletown Superior Court.  Soon after I arrived in my office, I was advised by Supervisory Assistant State's Attorney John Cashmon and Senior Assistant State's Attorney Barbara Hoffman, both of G.A. 9, that the Middletown Police had received a 911 telephone call that morning that Edward Root had threatened to kill Assistant State's Attorney Barbara Hoffman.  They also told me that the plaintiff had a motor vehicle case on the docket that day, (Dkt. MV9-412077), and that there was an outstanding warrant for the plaintiff for Failure to Appear in the Second Degree.  They then told me that the plaintiff had been in the courthouse earlier that morning, but had left after being told that the Re-arrest warrant would be served.  A short time later, Attorney Hoffman was alerted to the threat against her.  All this occurred before my arrival at the courthouse.

9.  I knew of Mr. Root from a case in the early 1990's in which I prosecuted him for two felonies, upon which Mr. Root was acquitted after a jury trial.  I had no contact with Mr.

Root and was not even aware that Mr. Root had a pending case in G.A. 9 until I was told about the threat to Assistant State's Attorney Hoffman by Assistant State's Attorney Cashmon and Hoffman on July 27, 2001.

10. After learning of the threat to Assistant State's Attorney Hoffman's life, I immediately contacted Middletown Police Sergeant Amy Pear and a 911 dispatcher who told me that 911 had received a telephone call from a phone booth at Middlesex Hospital from a then unidentified female caller who said, amongst other things, that Edward Root had threatened to kill Prosecutor Barbara Hoffman because she had been trying to take him down for fifteen years. The caller would not reveal her identity to protect client confidentiality.

11. Assistant State's Attorney's Cashmon and Hoffman told me that the plaintiff was currently on probation with special conditions, including substance abuse counseling, as a result of either a DUI conviction or an Operating Under Suspension as a result of a DUI. Based upon this information, I believed that the plaintiff might have made the threat during a contact with a counselor or therapist and the 911 caller was alerting authorities to future dangerous behavior of the plaintiff.

12. At approximately 11:20 a.m., I notified the Connecticut State Police Troop F Westbrook of the threat and requested an investigation be commenced immediately. Detectives were assigned to the matter and I was told that they would be at the G.A. 9 Courthouse around 1:00 p.m. A road trooper responded before the detectives. After speaking with the state police, I learned that the plaintiff had returned to the courthouse and had been taken into custody by the Middletown Police. I had observed the Middletown Police taking a person out of the courthouse who I presumed was the plaintiff.

13. I was told that the Failure to Appear Warrant was from a State Police Troop K, (Colchester), case, but that the Warrant itself was at the G.A. 9 Courthouse, so the Middletown Police had the warrant and were holding Mr. Root for a trooper to pick him up for processing.

14. Because of the lateness of the morning, by the time the plaintiff was taken into custody by the Middletown Police it was too late for a trooper to process his arrest on the warrant and return him to G.A. 9 for the 12:00 arraignment docket in accordance with the policy set forth by the Administrative Judge for the Middlesex Judicial District. As a result, the plaintiff was processed on the F.T.A. arrest in Middletown then returned to the State Police Troop K barracks in Colchester where he was held.

15. At approximately 11:40 a.m. on Friday July 27, 2001, I received a telephone call from Trooper Moysey of Troop K who told me that he was at the Middletown Police Department and had placed the plaintiff under arrest on the Failure to Appear Warrant which had a $1,000 bond.

16. I told Trooper Moysey of the threat made against Assistant State's Attorney Barbara Hoffman and that a criminal investigation had been commenced by the Connecticut State Police at Troop F. I also told him that it was too late for an arraignment on the Failure to Appear warrant and that Troop F detectives were on their way to interview the plaintiff. I told Trooper Moysey that because of the plaintiff's threat, the danger to Ms. Hoffman, and the plaintiff's increased flight risk, the bond was to be increased from $1,000 to $250,000 on my authority. I also told Trooper Moysey not to reduce the bond and to contact me if a Bail Commissioner tried to reduce it.

17. It was within my authority as a Connecticut State's Attorney to increase the bond set for the plaintiff, especially given the grave threat against fellow prosecutor Barbara Hoffman and other factors. This threat constituted an important change in circumstances from when the Court set the bond at $1,000. The increase was warranted given that the plaintiff had: (1) made a threat to kill, (2) an officer of the court, (3) the plaintiff had a motive given that he was currently being prosecuted for two motor vehicle cases and had previous cases handled by Attorney Hoffman, (4) he knew where Barbara Hoffman lived, (5) he had access to firearms, (6) and thus

was also a danger to the public, and consequently, (7) he was an increased flight risk. Given these disturbing factors, I believed the increase in his bond was necessary to ensure the safety of Ms. Hoffman and his presence in court for arraignment on the motor vehicle and Failure to Appear charges.

18. In addition, the plaintiff was in violation of his probation and by leaving the courthouse in the morning of July 27, 2001 he might have feared that a second re-arrest warrant would be generated, further increasing the plaintiff's hostility toward Attorney Hoffman.

19. The plaintiff's threat and the other factors increased the risk that the plaintiff would not appear in court, since someone who has threatened to murder a member of the criminal justice system, whether a prosecutor, judge, or juror, is not going to appear in court. As a State's Attorney I had the authority to set the bond in addition to what a court had set since the circumstances had changed from the time the court had set the bond.

20. Another factor influencing my decision to increase the plaintiff's bond were several recent instances of violence by criminal defendants who committed violent crimes against participants in the criminal justice system. One case involved a defendant who was out on bond on a burglary case awaiting trial when he killed the primary witness against him and while the homicide investigation was in progress, he threatened another witness and shot two police officers. Another case involved a defendant who threatened his probation officer after confessing to a murder; and a third case involved a police officer who was killed during a motor vehicle pursuit of a fleeing burglar. Given the severity of Mr. Root's threat, it was necessary that the bond reflect the new increased risks that he posed.

21. I was not able to obtain a judicially approved increase in the $1,000 bond set on the plaintiff's Re-arrest warrant for three reasons. First, the Re-arrest Warrant was not on the docket, so there was no case for me to bring before the Court. Second, the Court's procedure required a motion to be filed with the court seeking a change in the bond in a pending case, but

without the case on the docket, there was no way to have it heard. Third, because the plaintiff had left the courthouse, service of the Re-arrest Warrant could not be made in time to make the arraignment docket for a formal bond hearing.

22.  When I increased the bond on the plaintiff's Re-Arrest Warrant I acted within my authority as a prosecutor. In my career as a prosecutor, there have been many occasions where I had input into the amount of bond set by a judge, made arguments to the court for setting bond, and gave the police advice on the amount of bond to set for individuals before and after an arrest. In the past I have also increased a bond set by a judge, as I did in Mr. Root's case, in my capacity as an Assistant State's Attorney, due to changed circumstances after the bond was set.

23.  On July 27, 2001, I spoke with Detective Anthony Buglione of the Connecticut State Police Troop F, who was investigating the threat against Attorney Hoffman, about whether Mr. Root could be arrested on "speedy information"[1] and if it was determined that he could not be, then an Arrest Warrant would be sought. I then contacted the Chief State's Attorney's Office to request that a prosecutor from that office handle Mr. Root's arraignment on the Failure to Appear charge and to handle any Arrest Warrant Application arising out of the threat to Attorney Hoffman.

24.  On Saturday, July 28, 2001, approximately 4:30 p.m. I received a telephone call from Sgt. Kelly at the Connecticut State Police, Troop K, who advised me that Ms. Diane Chace, the plaintiff's attorney, and a bondsman, wanted to post the $1,000 bond on the Failure to Appear Warrant and he was calling me about the higher bond. I directed Sgt. Kelly not to reduce the bond. I informed Sgt. Kelly that the plaintiff had threatened to kill Ms. Hoffman, that he had both the motive and ability to carry it out, and that as a result, there was a danger to Ms. Hoffman and an increased risk of flight which required an increase in his bond to $250,000.

---

[1] See C.G.S. §54-1f.  Arrest without warrant.

6

25. Later that day I spoke with Detective Buglione, who advised that his investigation lead to Mr. Root's ex-wife, Jean Graham contacting him on the evening of July 27th. Ms. Graham told Det. Buglione that Mr. Root had been at her residence in the early morning hours of July 27, 2001 and made threats against police officers and Assistant State's Attorney Barbara Hoffman. She further stated that Mr. Root talked about how many police officers he could kill if he got a gun and while he was at it he should kill Attorney Hoffman who was out to get him for years. Ms. Graham reported this to her social worker who, in turn, made the 911 call. Det. Buglione was going to obtain written statements from Ms. Graham and the social worker and would have an Arrest Warrant Application and Affidavit prepared on Monday morning, July 30, 2001.

26. At approximately 7:00 p.m. on July 28, 2001, after speaking with Det. Buglione, I called Sgt. Kelly back. Sgt. Kelly reported that Ms. Chace was very upset and might come to Troop K to obtain the release of her client, claiming that neither the police or I had the authority to increase the plaintiff's bond which had been set by the Court. I advised Sgt. Kelly not to release the plaintiff unless he posted the new bond and to tell Ms. Chace that she could argue for lower bond in court Monday morning, but that I was acting within my Constitutional and Statutory authority as a prosecutor in raising the plaintiff's bond.

27. On Monday, July 30, 2001, the Honorable Judge Thomas Parker signed and issued an arrest warrant charging the plaintiff with Threatening and Disorderly Conduct. This warrant was based upon the affidavit of Det. Buglione and arose out of the threat to Attorney Hoffman. Bond was set at $100,000 by Judge Parker. Later that day at Mr. Root's arraignment on those charges, Judge Wolven, after hearing arguments from A.S.A. Sedensky from the Chief State's Attorney's Office, Attorney Chace, and the Bail Commissioner, set the bond on the Threatening and Disorderly conduct charge (Dkt. CR9-158228) at $250,000 with additional conditions.

28. I was not involved in the issuance of the Arrest Warrant or the arraignment July 30, 2001, and have not had any further involvement with this or any other matter involving Mr. Root.

29. That the information contained herein is based on my personal knowledge, review of court records and transcripts, police reports, prosecutor's files and speaking with other prosecutors and police officers.

                                                                                                                                                                    /s/_____
                                                   Timothy Liston

| | |
|---|---|
| STAE OF CONNECTICUT | ) |
| | ) ss: |
| COUNTY OF HARTFORD | ) |

Subscribed and sworn to before me this \_\_\_\_ day of June, 2004.

                                                /s/_____
                                          Commissioner of the Superior Court
                                          Notary Public
                                          My commission expires: