UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EDWARD ROOT, JR. | : | |
| | : | |
| VS. | : | NO. 3:03CV00949(JCH) |
| | : | |
| TIMOTHY LISTON | : | AUGUST 2, 2004 |

PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION TO FOR SUMMARY JUDGMENT

_____The defendant once again appeals to this Court to justify his decision to increase the bond of the plaintiff after a judge of the Superior Court of the State of Connecticut had set bond, and before any new warrant had been lodged against the plaintiff. This Court previously rejected a claim that prosecutors have the unilateral right to countermand the decision of a neutral and detached magistrate when it denied the defendant's motion to dismiss. Comes now a summary judgment motion with additional facts and elaborate justifications for this abuse of prosecutorial discretion. For all of the reasons stated below, this summary judgment motion should be denied. The defendant is entitled neither to absolute immunity nor to qualified immunity. Indeed, the defendant's most recent motion serves only to multiply the proceedings.

I.      **Standard**

        When passing upon a motion for summary judgment, the district may not

resolve factual disputes or make credibility determinations, even if the case is one which eventually will be tried without a jury. In re Unisys Savings Plan Litigation, 74 F.3d 420 (3d Cir. 1996). Rather, the court must resolve any ambiguities and draw all inferences against the moving party. Cargill, Inc. v. Charles Kowsky Resources, Inc., 949 F.2d 51 (2d Cir. 1991). The evidence of the party against whom summary judgment is sought must be believed. Revak v. SEC Realty Corp., 18 F.3d 81 (2d Cir. 1994). The court must construe the evidence in the light most favorable to the party opposing summary judgment and deny the motion unless no construction of the evidence could support judgment in the plaintiff's favor. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970); Olin Corp. v. Consolidated Aluminum Corp., 5 F.3d 10, 14 (2d Cir. 1993); United States v. Certain Funds on Deposit in Scudder Tax Free Investment Account #2505103, 998 F.2d 129 (2d Cir. 1993); Union Pacific Corp. v. United States, 5 F.3d 523, 525 (Fed. Cir. 1993); Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 105 (1994); D.H.R. Construction Co. v. Donnelly, 180 Conn. 430, 434 (1980); Connell v. Colwell, 214 Conn. 242, 246-47 (1990). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

To raise a genuine issue of material fact sufficient to defeat a summary judgment motion, the opponent need not match, item for item, each piece of evidence proffered by the moving party.  So long as the opponent has offered enough evidence to exceed the "mere scintilla" threshold, summary judgment is to be denied.  In re Unisys Savings Plan Litigation, supra, 74 F.3d 420, 433.

Even if the nonmoving party's evidence appears "implausible," the court may not "weigh" the evidence and must proceed with the greatest caution.  R. B. Ventures, Ltd. v. Shane, 112 F.3d 54, 58-59 (2d Cir. 1997).  "If reasonable minds could differ as to the import of the evidence...and if...there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment."  Id. at 59, quoting Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988), and In re Japanese Elec Prods. Antitrust Litigation, 723 F.2d 238 (3d Cir. 1983) (internal quotation marks omitted).

"A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non moving party.'  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Thus, '[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.'"  Lazard Freres & Co. v. Protective Life Ins. Co.,

108 F.3d 1531, 1535 (2d Cir. 1997).  Citing Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

A party opposing summary judgment may do so by an affidavit clarifying that party's prior deposition testimony.  Ramos v. Geddes, 137 F.R.D. 11 (S.D. Tex. 1991).  Hearsay evidence, while not admissible in support of a motion for summary judgment, **is** sufficient to defeat a summary judgment motion so long as there is reason to believe that the evidence can be offered in an admissible form at trial.  McMillian v. Johnson, 88 F.3d 1573, 1584 (11th Cir. 1996); Williams v. Borough of West Chester, 891 F.2d 458 (3d Cir. 1990); Tetra Technologies, Inc. v. Harter, 823 F. Supp. 1116, 1120 (S.D.N.Y. 1993); Cerniglia v. LeVasseur, 19 Conn. L. Rptr. No. 4, 119 (1997).

**II     Facts**

The plaintiff relies upon the following facts in support of his argument in opposition to the motion for summary judgment and are identical to those relied upon in his opposition to the motion to dismiss:

1.     On or about July 27, 2001, the plaintiff was arrested at the Superior Court for the Judicial District of Middletown pursuant to a warrant for a Failure to Appear in Court. The criminal charge for which the plaintiff had allegedly failed to appear was driving under suspension. In fact, the defendant knew the plaintiff was present in

4

Court as required, and took affirmative steps to assure that the plaintiff's case would not be called by a judge of the Superior Court.

2.     A Judge of the Superior Court for the State of Connecticut set a bond of $1,000 on that file, and the warrant for the plaintiff's arrest reflected that fact.

3.     The plaintiff was taken into custody by members of the Connecticut State Police and removed to Troop K, where he was detained.

4.     A bondsman appeared at Troop K several times on July 27, 2001, July 28, 2001, and July 29, 2001, ready, willing and able to post a $1,000 bond to secure the plaintiff's liberty.

5.     Defendant Liston informed the state police during this time that the bond was, in fact, $250,000, a fact he knew to be false at the time he made the statement.

6.      Defendant Liston did not seek an order of the Superior Court to change the judicially set bond for the plaintiff.

7.     The plaintiff was brought to the Middletown Superior Court on July 30, 2001, where he was arrested on new misdemeanor charges of threatening and disorderly conduct. The bond set by the judge signing that warrant was $100,000.

8.  At no time on July 27, July 28 or July 29, 2001, had a judicial authority of the State of Connecticut set a bond of $250,000 on any charge for which the plaintiff had been arrested, or for which an arrest of the plaintiff was being contemplated.

9.  At all times from the moment of his arrest on a failure to appear charge on July 27, 2001, until July 30, 2001, the plaintiff's arrest warrants reflected bonds set by neutral and detached magistrates.

10.  The fact that judge-set bonds were in place during this period was known to defendant Liston.

11.  Defendant Liston materially misrepresented the bonds set on the plaintiff for the express purpose of assuring that he remained behind bars and unable to secure his liberty.

## III.    Argument

The defendant asserts that he was acting within the scope of his prosecutorial authority when he informed the police that a bond of $250,000 had been set on the plaintiff on the only files creating jurisdiction over the person of the plaintiff.  The only bond that had been set had been set by a judge of the Superior Court in the amount of $1,000. Defendant Liston then unilaterally sought to change the bond without Court intervention. In effect. Mr. Liston filed, and then granted, his own bond modification motion on an ex parte basis.

6

The facts in this case are wholly distinguishable from those presented in Sanchez v. Doyle, 254 F. Supp. 266, 269 (D. Conn. 2003), decided by Arterton, J. In Sanchez, the state's attorney set bond before the criminal defendant had been presented to a judge for arraignment. In other words, the prosecutor used his quasi-judicial authority to set bond prior to an arrest. As Judge Arterton noted, a "state prosecutor is entitled to absolute immunity when he orders or advises a Connecticut State Police officer to set an arrestee's bail ..." **Id**., 269. The defendant would transform this ruling, review of which was not sought in the Second Circuit, to a more expansive rule of law: "A state prosecutor is entitled to absolute immunity when he countermands a order of a Superior Court judge and substitutes his wishes for the order of the court." There is no case law in the United States of America to support this rule, nor has the defendant recited any in his motion for summary judgment. Absent from the motion is even an affidavit from another state's attorney approving of the practice litigated in this case, a damning admission by silence that there can be no good-faith disagreement about existing law among prosecutors on the topic.

The absence of case law to support the theory that a prosecutor can, in effect, alter court orders and misrepresent the court's orders to law enforcement officers is not even a close call. The defendant cites no case on which he relied in unilaterally vacating a court order. He is not entitled to qualified immunity.

7

Our law recognizes that prosecutorial immunity can be abandoned when a prosecutor steps outside his core prosecutorial function. Imbler. In Kalina v. Fletcher, 118 S. Ct. 502 (1997), the Supreme Court held that a prosecutor who crosses the line separating investigator from advocate may lose the benefit of his immunity from suit. In that case, the prosecutor signed an affidavit averring to the truth or certain material facts upon which the subsequent prosecution relied. See also, Day v. Morgenthau, 909  F.2d 75, 77 (2d Cir. 1990). The Supreme Court has approved a functional test for determining whether a prosecutorial act is immune.  Forrester v. White, 484 U.S. 219, 229 (1988);  Hampton v. Chicago, 484 F.2d 602, 608 (C.A.7 1973); Buckley v. Fitzsimmons, 509 U.S. 259, 273-74 (19__) .

In this case, the prosecutor did far worse than play investigator; he usurped the judicial function and deprived the plaintiff of a chance to meet a condition of relief set by a neutral and detached magistrate. The defendant is not entitle to immunity of any sort for what amounts to a constitutional coup. To even raise this issue on these facts is frivolous.

Of course, now this Court has before the facts justifying the exigency. Basically they come down to this: The prosecutor believed a criminal defendant had uttered a threat to kill one of his staff. The threat comes down to the following statement reported through the lense of double hearsay and uttered by

a drunken man to his ex-wife: "If I had a gun I could take out (50) cops and Barbara Hoffman." What next? Suspensions of habeas corpus on Mr. Liston's initiative for those breaching the peace by uttering the classic double subjunctive of summer camp campfires: "If I had a hammer, I could hammer in the morning ...?"

The defendant then seeks to shield himself behind the cloak of his own hysteria by contending that these words were similar to cases in which other law enforcement officers had been threatened or injured. He recites the case of a high speed chase where an officer died, a case Mr. Liston tried to a verdict and in which a jury rejected Mr. Liston's charge of felony murder. (Pattis Affidavit.) He then refers to a case in which a young man shot two police officers, not telling the court that the shooting took place late at night, as officers leapt from cover to apprehend a young man. The young man was acquitted at trial of attempted murder of the police officers. Indeed, the young man was even acquitted of assaulting one of the officers after raising a claim of self-defense. (Pattis Affidavit) Finally, he compares the plaintiff's drunken double subjunctive to the threat of a man who had killed someone and dumped his body in a state forest to harm the probation officer to whom he had taken the body. (Pattis Affidavit.) Such reasoning, if that is what it can be called, certainly supports a claim for punitive damages in this case as the defendant seems incapable of drawing fine,

even gross, distinctions between actual and perceived threats: this is a textbook case of deliberate indifference.

THE PLAINTIFF

BY_____
     Norman A. Pattis
     Williams and Pattis, LLC
     51 Elm Street, Suite 409
     New Haven, CT 06510
     (203) 562-9931
     FAX: (203) 776-9494
     Federal Bar No. ct13120

## **CERTIFICATION**

The foregoing was mailed, first-class mail, postage prepaid, this 2nd day of August 2004 to Robert Fiske, 110 Sherman Street, Hartford, CT 06105..

_____
NORMAN A. PATTIS

10