**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

EDWARD ROOT,                    :
        Plaintiff,            :        CIVIL ACTION NO.
v.                              :        3:03-cv-949 (JCH)
                                :
TIMOTHY LISTON,                 :
        Defendant.            :        MARCH 28, 2005

**RULING ON DEFENDANT'S MOTION FOR**
**SUMMARY JUDGMENT [DKT. NO. 26]**

Defendant Timothy Liston, State's Attorney for the Judicial District of Middlesex,
brings this motion for summary judgment pursuant to Fed. R. Civ. P. 56, asserting that,
as a prosecutor for the State of Connecticut, the doctrines of absolute immunity and
qualified immunity shield his official actions from civil suits for damages. Plaintiff
Edward Root opposes the motion on the grounds that Liston does not qualify for either
absolute or qualified immunity because Liston acted in the absence of all authority,
Liston's actions violated Root's constitutional rights, and because Liston's actions
violated clearly established legal tenets. For the reasons that follow, Liston's motion for
summary judgment is granted.

**I.      BACKGROUND[1]**

Timothy Liston became a prosecutor in the state of Connecticut in 1977 and was
appointed State's Attorney for the Judicial District of Middlesex in July 2001. On June
9, 2001, Edward Root was arrested on state charges of Operating Under Suspension,
Operating Without Insurance, and for having an Expired Emission Sticker. Root's court

---

[1]The court's recitation of the facts is based on Root's admissions and statements of fact
provided in his Rule 56(a)(2) statement. In Root's Rule 56(a)(2) statement, he failed to support
both his denials of several of Liston's statements of fact, and his refusals to admit or deny other
statements, in violation of D. CONN. LOC. R. CIV. P. 56(a)(3). All such unsupported statements
are therefore deemed admitted.

appearance for these charges was originally scheduled for June 27, 2001, but was continued to July 18, 2001.  On July 13, 2001, Root was arrested again, this time on state charges for Operating Under Suspension, Operating Without Insurance, and Operating an Unregistered Motor Vehicle.  Root's court appearance on these charges was set for July 27, 2001.

Root was not present in the Superior Court in Judicial Area Number 9 ("GA-9") when his case was called on July 18, 2001.  Root alleges that he was present in the courthouse on July 18, but that prosecutors refused to call his case while he was present.  Based on Root's failure to appear when called, Judge Carol Wolven ordered a re-arrest on state charges for Failure to Appear and set bond in the amount of one-thousand dollars ($1,000).  Judge Wolven issued a re-arrest warrant on the original three charges and the Failure to Appear charge on July 20, 2001.  On July 27, 2001, a 9-1-1 dispatcher allegedly received a tip that Root had made a threat against the life of Assistant State's Attorney Barbara Hoffman.  Liston became aware of this alleged threat.  He notified Connecticut State Police Troop F Westbrook of it and requested an immediate investigation.  Detectives were assigned to investigate the case.

Root appeared at the GA-9 Courthouse on Friday, July 27, 2001, but was arrested by the Middletown Police before his case was called.  Liston claims that Root's arrest occurred too late for Root to be processed on the warrant and returned to GA-9 in time for the 12:00 p.m. arraignment docket.[2]  Therefore, Root was processed on his Failure to Appear charge in Middletown and then returned to State Police Troop K

_____

[2]Root disputes Liston's claim that he could not be presented before a judge on July 27, 2001.  See Pattis Aff. at ¶ 8.

barracks in Colchester where he was held on the original $1,000 bond.  The State

Police contacted Liston and informed him that Root had been arrested and processed,

and had a $1,000 bond.

Liston told State Police Trooper Moysey of the alleged threat on ASA Hoffman's

life and informed him that an investigation was underway.  Liston told Moysey that it

was too late to arraign Root on the Failure to Appear charge and that detectives were

on their way to the barracks to interview Root.[3]  Liston also told Moysey that, because

of the plaintiff's threat against ASA Hoffman and the increased flight risk that entailed,

Liston was increasing Root's bond from $1,000 to $250,000 on his own authority.

Liston instructed Moysey that the bond was not to be lowered and that Moysey should

contact Liston if a Bail Commissioner attempted to reduce it.  Liston claims that he was

unable to bring the new information concerning the alleged threats before a judge for

reconsideration of the bond amount because Root was arrested too late for his case to

be on the court's docket on July 27, a claim Root vehemently denies.

On Saturday, July 28, 2001, Root's attorney, Ms. Diane Chace, and a bail

bondsman attempted to post Root's $1,000 bail.  The State Police contacted Liston

about the increased amount, and Liston reconfirmed that Root's bond was now

$250,000 due to the alleged threat against ASA Hoffman.  Attorney Chace tried to

obtain Root's release on the lower bond amount again later that evening, with no

success.  Root was unable to post the higher bond and remained in custody for the

---

[3]This conversation took place at 11:40 a.m. on July 27, 2001.  Root claims that
Middletown Superior Court remains open from 9 a.m. to 5 p.m. and that there are typically
judges available during those hours.  See Pattis Aff. at ¶ 8.

remainder of the weekend.

On Monday, July 30, 2001, Judge Parker signed an arrest warrant for Root on state charges of Threatening and Disorderly Conduct based on the alleged threat against ASA Hoffman's life.  Bond on that warrant was set at $100,000.  Root was transported to court on the same day and was served with the warrant in the court cellblock.  Root was subsequently arraigned on both the Failure to Appear and Threatening charges before Judge Wolven.  At the arraignment, Attorney Chace argued that Liston's actions were improper, without legal authority, and in violation of Root's civil rights.  Following oral argument, Judge Wolven set the bond on the Threatening charge at $250,000 and reaffirmed the $1,000 bond on the Failure to Appear charge.

Attorney Chace appealed the $250,000 bond on August 7, 2001.  The Appellate Court took up the appeal, but denied the relief sought and granted the State's motion to dismiss.  Attorney Norman Pattis subsequently appeared for Root on the Threatening and Disorderly Conduct charges, and moved for a reduction in the bond.  On November 29, 2001, Judge Clifford granted Attorney Pattis's motion and reduced the bond from $250,000 to $100,000.

On May 28, 2003, Root filed the suit at bar claiming fraud, unreasonable seizure, and the setting of unreasonable bond in violation of the common law of Connecticut and the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

## II.    STANDARD OF REVIEW

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  See, FED.R.CIV.P. 56(c); Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Eng'g Corp., 221 F.3d 293, 300 (2d Cir. 2000).  A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact . . . .'"  Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted).  A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.) (quoting Anderson, 477 U.S. at 248), cert. denied, 506 U.S. 965 (1992).  After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987).

The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide."  Aldrich, 963 F.2d at 523.  Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).  See also Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992).

A party may not create a genuine issue of material fact by presenting contradictory or unsupported statements.  See Securities & Exchange Comm'n v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir. 1978).  Nor may she rest on the

"mere allegations or denials" contained in her pleadings.  Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).  See also Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible).  Litigants in the District of Connecticut must comply with Local Rule 56 which requires a party opposing summary judgment to clearly list each disputed material issue of fact and cite to admissible evidence in the record to support each fact, or risk entry of summary judgment against them.  See D. CONN. LOC. R. CIV. P. 56.

## III.    DISCUSSION

It is well established that prosecutors have absolute immunity from a civil suit for damages under 42 U.S.C. § 1983 when engaged in activities that are "intimately associated with the judicial phase of the criminal process."  Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976); see also Barr v. Abrams, 810 F.2d 358, 360-61 (2d Cir. 1987).  Absolute immunity "creates a formidable obstacle for a plaintiff seeking to maintain a civil rights action against a [state's] attorney . . . ."  Pinaud v. County of Suffolk, 52 F.3d 1139, 1147 (2d Cir. 1995).  This immunity allows for the  "vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system."  Imbler, 424 U.S. at 427-28.  Without such immunity, prosecutors would be "hampered in exercising their judgment . . . by concern about resulting personal liability . . . ."  See id. at 426.  Sound public policy is served by immunizing prosecutors from "harassment by unfounded litigation . . . [that] would cause a deflection of the prosecutor's energies from his public duties . . . ."  Id. at 423.

"Absolute immunity depends on 'the nature of the function performed, not [on] the identity of the actor who performed it.'" See Pinaud, 52 F.3d at 1147 (quoting Forrester v. White, 484 U.S. 219, 229 (1988)). Prosecutors possess absolute immunity only for "'quasi-judicial' activities [that] include the initiation of a prosecution and the presentation of the government's case." Barr, 810 F.2d at 361. Prosecutorial immunity is not limitless. If a prosecutor acts in an administrative or investigative function, he may claim only qualified immunity. See id. Also, like judges, prosecutors must have "at least a semblance of jurisdiction" to be absolutely immune. See id. As the Barr court summarized:

> [U]nless a prosecutor proceeds *in the clear absence of all jurisdiction*, absolute immunity exists for those prosecutorial activities intimately associated with the judicial phase of the criminal process. Conversely, where a prosecutor acts without any colorable claim of authority, he loses the absolute immunity he would otherwise enjoy. In such a case, however, he remains protected by the shield of qualified immunity . . . .

See id. (emphasis added).

This does not mean, however, that the absence of direct statutory authority removes a prosecutor from the protection of absolute immunity. See, e.g., id. Such a "crabbed reading of Imbler" is inappropriate, as would be a holding that "a prosecutor is without absolute immunity the moment he strays beyond his jurisdictional limits . . . ." See id. Such a holding would "do violence to [the] spirit [of Imbler]." See id.

The results of the application of absolute immunity are sometimes harsh. As the U.S. Supreme Court noted, "[t]o be sure, [absolute] immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty." Imbler, 424 U.S. at 427. However, the Court

decided "the alternative of qualifying a prosecutor's immunity would disserve the broader public interest."  See id.

The case at bar presents one of those troubling situations prophesied by the Imbler Court.  It is uncontroverted that Liston unilaterally raised a judicially-set bond on Root's Failure to Appear charge from $1,000 to $250,000 without consulting the court, primarily because of serious allegations against Root for which he had neither been charged nor arrested.  Liston has not pointed to any piece of legislation or case law, and the court has not discovered any, that expressly authorizes a state's attorney to modify a bond once it has been set by a court.  What remains for the court to decide is whether Liston acted in the absence of all jurisdiction, or merely in a manner in excess of his authority.

As a threshold matter, a prosecutor's participation in the process of setting bond or bail is "best understood as [a] component[ ] of the initiation and presentation of a prosecution, and therefore [is] protected by absolute immunity."  Pinaud, 52 F.3d at 1149 (holding that "actions in connection with a bail application" are covered by absolute immunity); see also Sanchez v. Doyle, 254 F.Supp.2d 266, 271 (D. Conn. 2003) ("Setting bail is a judicial act.").  However, while Pinaud and Sanchez make clear that actions taken in relation to bail or bond are not investigative or administrative, Liston must still have some shred of jurisdiction to avail himself of the extraordinary protection of absolute immunity.  See Barr, 810 F.2d at 361.

Liston argues that he had a "colorable claim of jurisdiction" based primarily on CONN. GEN. STAT. §§ 54-63d(d), 54-63c(a), and 51-277(a) & (b).  Section 54-63d provides in pertinent part:

-8-

(d)  The police department shall promptly comply with the order of release of the bail commissioner, except that if the department objects to the order or any of its conditions, the department shall promptly so advise a state's attorney or assistant state's attorney, the bail commissioner and the arrested person.  The state's attorney or assistant state's attorney may authorize the police department to delay release, until a hearing can be had before the court then sitting for the geographical area which includes the municipality in which the arrested person is being detained or, if the court is not then sitting, until the next sitting of said court.

CONN. GEN. STAT. §§ 54-63d(d).  Section 54-63c provides in pertinent part:

(a) . . . the police officer shall promptly order release of the arrested person upon the execution of a written promise to appear or the posting of such bond as may be set by the police officer, except that no condition of release set by the court or a judge thereof may be modified by such officer . . . .

CONN. GEN. STAT. §§ 54-63c(a).

Liston argues that Section 54-63d(d) provides state's attorneys with the authority to order police officers to set or modify bond amounts, and hold defendants despite a bond having been set, in certain circumstances.  See Mem. Supp. Summ. J. at 7-8. Additionally, Liston argues that Section 54-63c(a) prohibits only police officers from modifying judge-set bonds, not prosecutors.  See id. at 8.  Liston further notes that this prohibition on bond modification is not found in 54-63d.  See id.  Adding to his statutory argument, Liston points out that Sections 51-277(a) & (b) authorize state's attorneys to "take all steps necessary and proper" to prosecute criminal charges against defendants. See id. at 11.  Liston argues that he took such a necessary step by raising Root's bond based on the belief that, once Root came under investigation for threatening a state prosecutor, Root became a significantly greater flight risk than when bond was originally set.  See id.  Without the presence of Root in court, Liston could not prosecute him. See id.  At worst, Liston argues, he overstepped his authority by raising Root's bond

-9-

from $1,000 to $250,000 in response to Root's alleged threats against ASA Hoffman and his alleged increased risk of flight.  See id. at 14.

Root responds that the factual and legal justifications cited by Liston provide so little support for Liston's actions as to constitute no authority at all.  Root argues that there exists "no case law in the United States of America" to support Liston's claims of authority.  This argument, the court's research has found, is nearly, but not precisely, the case.  The court has found one district court case wherein a county attorney had absolute immunity for changing a court-set bond.

In Wilson v. City of Chanute, 43 F.Supp.2d 1202 (D.Kan. 1999), the parents of a detainee brought suit under Section 1983 against, inter alia, a county attorney who aided in the release from custody of their son, who was allegedly in need of medical attention.  When Wilson, the detainee, was presented for his bond hearing, a local judge set bail at $10,000 cash or surety bond and suggested that he be medically examined.  See Wilson, 43 F.Supp.2d at 1207.  Wilson's condition deteriorated after the bond hearing, and the police, rather than calling an ambulance, called the county attorney "to suggest that Wilson be released on his own recognizance."  See id.  The county attorney directed her secretary to prepare an own recognizance bond and take it to the police station for Wilson's signature, before taking it to the local judge.  See id. Wilson's signature was necessary so that the local judge would approve the bond form. See id.  The county attorney's secretary got the signatures of Wilson and his sister at the police station and then, apparently before the bond form was approved by the judge, the police sent Wilson home.  See id. at 1208 (Wilson arrived home approximately four minutes after signing the bond form).  He died shortly thereafter.

-10-

<u>See</u> <u>id.</u>

The plaintiffs alleged that the county attorney's actions violated their son's Fourteenth Amendment rights. <u>See</u> <u>id.</u> at 1214. The <u>Wilson</u> court held that the county attorney's actions in changing the local judge's bail bond into an own recognizance bond, and then delivering it to the judge, apparently after the modifications were acted upon by the police, were "within the ambit of absolute immunity." <u>See</u> <u>id.</u> The county attorney's actions fell within her prosecutorial role of advocating bail. <u>See</u> <u>id.</u> at 1215.

As the plaintiff points out, on-point authority is reed-thin. However, this court concludes that Liston had enough jurisdiction in the area of bail or bond proceedings for his actions to fall within the broad scope of absolute immunity. A prosecutor's actions when participating, generally, in the bail or bond setting process are protected by absolute immunity. <u>See</u> <u>Pinaud</u>, 52 F.3d at 1149 (prosecutor absolutely immune for allegedly improperly seeking to increase plaintiff's bail); <u>see</u> <u>also</u> <u>Sanchez</u>, 254 F.Supp.2d 274 (prosecutor absolutely immune for ordering police to set bail at an allegedly excessive level prior to bail being set by a court). Also, Liston is correct that Section 54-63d(d) gives a state's attorney the ability to instruct the police to delay the release of a detainee with a previously set bond, the practical effect of Liston's raising of Root's bond, until a hearing can be held concerning the objectionable terms of the bond. Finally, Section 54-63c's prohibition on changing court-set bonds explicitly refers to police, not prosecutors, and there is no such prohibition in Section 54-63d or, as far as the court has been able to find, elsewhere in the Connecticut statutes.

That being said, Liston was not merely seeking to increase Root's bail, as in <u>Pinaud</u>, nor ordering the bail increased prior to a judge's ruling on the matter, as in

Sanchez.  Also, Liston's actions miserably failed to live up to the terms of Section 54-63d(d).  First, Root's $1,000 bond was set by a judge, not the bail commissioner.  Second, the police did not inform Liston of an objection to the bail amount, Liston informed the police of his objection and then ordered the bond modification.  Finally, Liston did not merely instruct the police to detain Root, he modified a court-set bond.  Liston's failure was complete.

However, the Connecticut statutes quoted *supra* make it clear that the State of Connecticut intended its prosecutors to have some authority to order defendants retained after bond is set, in addition to their common law authority to advocate on behalf of the state in the bond setting process.  See CONN. GEN. STAT. §§ 54-63d(d).  Section 54-63d(d) specifically allows a "state's attorney or assistant state's attorney" to "authorize the police department to delay release" of a detainee despite that detainee having a set bond amount.  CONN. GEN. STAT. §§ 54-63d(d).  Even if Liston exceeded, or even misused or possibly intentionally misrepresented, the scope or limits of that authority, that would not affect the determination of absolute immunity in this case.

As the Supreme Court has explicitly noted, a prosecutor is protected by absolute immunity even where his actions are "malicious or dishonest."  See Imbler, 424 U.S. at 427.  The Second Circuit has also made clear that, since the application of absolute immunity is based on the nature of the activity in question, the actor's wrongfulness "has no bearing" on the court's analysis.  See Pinaud, 52 F.3d at 1150.  Absolute immunity attaches even when the individual acts in excess of his jurisdiction and commits grave procedural errors, see Tucker v. Outwater, 118 F.3d 930, 936 (2d Cir. 1997), or "engage[s] in questionable or harmful conduct . . . ," see Barrett v. United

-12-

States, 798 F.2d 565, 573 (2d Cir. 1986).

The Supreme Court has explained that such harsh results are necessary to uphold vital public policy considerations. Prosecutors must be able to vigorously perform their duties; duties that are "essential to the proper functioning of the criminal justice system." See Imbler, 424 U.S. at 427-428. The threat of civil suit may hinder, consciously or unconsciously, a prosecutor living in "constant dread of retaliation." See id. at 428 (quotation omitted). This court is also mindful of the Supreme Court's reminder that:

> the immunity of prosecutors from liability in suits under § 1983 does not leave the public powerless to deter misconduct or to punish that which occurs. This Court has never suggested that the policy considerations which compel civil immunity for certain governmental officials also place them beyond the reach of the criminal law. Even judges, cloaked with absolute civil immunity for centuries, could be punished criminally for willful deprivations of constitutional rights on the strength of 18 U.S.C. § 242, the criminal analog of § 1983. The prosecutor would fare no better for his willful acts. Moreover, a prosecutor stands perhaps unique, among officials whose acts could deprive persons of constitutional rights, in his amenability to professional discipline by an association of his peers. These checks undermine the argument that the imposition of civil liability is the only way to insure that prosecutors are mindful of the constitutional rights of persons accused of crime.

See id. at 428-29 (citations omitted). However, any issue of Liston's liability other than under Section 1983 is not before this court.

The court finds that Liston was engaged in an activity closely associated with a state's attorney's prosecutorial role in the criminal process when he raised Root's court-set bond from $1,000 to $250,000. The court also finds that, while Liston grasps a thin reed of authority for his actions, and exceeded what authority the State of Connecticut has granted to state's attorneys in the area of bond setting and bond modification, he

did not act "in the clear absence of all jurisdiction." <u>Barr</u>, 810 F.2d at 361. Therefore, Liston is entitled to absolute immunity. <u>See</u> <u>id.</u> Liston's motion for summary judgment as to Root's constitutional claims is granted.

Having granted summary judgment to Liston on all of Root's federal claims, the court declines jurisdiction as to Root's possible state claims. <u>See</u> <u>United Mine Workers of America v. Gibbs</u>, 383 U.S. 715, 726 (1966) (". . . if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.") Root's state law claims are dismissed. <u>See</u> 28 U.S.C. § 1367(c).

## IV.    CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment [Dkt. No. 26] is hereby **GRANTED** as to all federal claims. Plaintiff's state law claims are hereby **DISMISSED**. The clerk is ordered to close the case.


**SO ORDERED.**

Date at Bridgeport, Connecticut, this 28th day of March, 2005.


/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge